Q Now, after you got the report concerning this burglary, what did you do?

A We made a back up on it, went out and did an investigation on it, contacted the witness in this case and put together a photo spread; showed him a photo spread that he picked out [sic] the actor out of the photo spread. With that, we secured a warrant and we went looking for Mr. Fanase.

Q How did you put together that photo array?

A I got Mr. Fanase's photograph and I had other pictures in our files that I thought were similar as part of a photo spread.

(N.T., 12/10/91, pp. 160–161.)

Specifically, Fanase claims that the reference to "other pictures in our files" raised an improper inference of past criminal conduct. We disagree. Initially, we note that the "other pictures in our files" referred to photographs of other individuals, which were then placed with Fanase's to make the photo spread. Thus, appellant's true claim is that the statement "I got Mr. Fanase's photograph" somehow indicated past criminal conduct. Again, we disagree. As we stated in *Commonwealth v. Brown,* 511 Pa. 155, 512 A.2d 596 (1986),

One's picture may be in the possession of the police even though the person was neither charged, tried nor convicted of any crime.

Leaving aside the fundamental logic that a previous record does not prove present guilt, the possession by the police of one's photo does not ineluctably prove a previous *conviction.* At the most it proves only

that the police had a photo of the defendant on file.

*Id.* at 156, 512 A.2d at 596.

Further, even assuming that the vague reference to getting "Mr. Fanase's photograph" somehow prejudiced Fanase, the prejudice was cured by the following exchange, which occurred immediately after a sidebar called by defense counsel to discuss the reference to Fanase's photos:

Q [BY THE DISTRICT ATTORNEY]: Detective, now, the reason that you had this photograph of Mr. Fanase [was] because he was identified as being the owner of a car; correct?

A That's correct.

(N.T., 12/10/91, p. 162.) Thus, Fanase's final claim fails.

Based on the foregoing, although we find that the PCRA court improperly reinstated Fanase's appellate rights because those rights had been waived, we nevertheless affirm its denial of his PCRA claims. The February 26, 1992 judgment of sentence is therefore affirmed.

Judgment of sentence affirmed.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Petitioner,**

v.

**SCHOOL DISTRICT OF PHILADELPHIA, Respondent,**

and

**Harry and Annemarie Gwynne, Aspira of Pennsylvania, Intervenors.**

Commonwealth Court of Pennsylvania.

Nov. 3, 1995.

Michael Hardiman, Assistant Chief Counsel, for petitioner.

William H. Brown, III, for respondent.

Michael Churchill and Patricia A. Lowe, for intervenors.

SMITH, Judge.

The subject matters before the Court involve the renewed motion of the School District of Philadelphia to join the Commonwealth of Pennsylvania and Governor Thomas J. Ridge (hereafter Governor) and the renewed motion of Intervenor ASPIRA to join the Commonwealth and Governor and the City of Philadelphia and Mayor Edward Rendell (hereafter Mayor) for purposes of assessing liability for additional funding claimed by the School District to be necessary for it to comply with the Court's November 28, 1994 remedial order entered in this school desegregation case. The history of this litigation is set out in *Pennsylvania Human Relations Commission v. School Dist. of Philadelphia (HRC VI)*, 161 Pa. Cmwlth. 658, 638 A.2d 304 (1994), and the Court's remedial order is found at *Pennsylvania Human Relations Commission v. School Dist. of Philadelphia (HRC VII)*, 168 Pa.Cmwlth. 542, 651 A.2d 186 (1994).

By order dated August 22, 1995, the Court directed the Commonwealth and Governor and the City and Mayor to appear at hearing (argument) to show cause why they should not be joined as defendants in this proceeding for purposes of providing additional funding to the School District to comply with the remedial order of the Court. The Governor

in turn filed an application for recusal of the presiding judge, and thereafter the parties filed their respective responses to the renewed joinder motions, raising various defenses discussed below. At argument on October 6, 1995, Counsel for the City and Mayor joined in the Governor's application for recusal.

## I.

## RECUSAL

The Court will first consider the issue of recusal. The application for recusal requests the Court to recuse herself pursuant to conduct standards articulated in Canon 3C. of the Code of Judicial Conduct. Canon 3C. states in relevant part:

(1) A judge should disqualify [herself] in a proceeding in which [her] impartiality might reasonably be questioned, including but not limited to instances where:

(a) [She] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings;

(b) [She] served as lawyer in the matter in controversy, or a lawyer with whom [she] previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it. . . .

The application seeks recusal on two stated premises: The impartiality of the Court might reasonably be questioned because of her prior service as a Commissioner on the Pennsylvania Human Relations Commission (hereafter Commission), through gubernatorial appointment, from December 1974 through January 1980, and an appearance of bias arises from the alleged commingling of prosecutorial functions of the Commission and the adjudicatory and appellate functions of the Court that deprives the Governor of due process of law.

a.

■ At the outset, the Court sets forth the following guiding principles in considering a request for recusal. Underlying Canon 3C. is the principle that a party seeking recusal must produce evidence to support the request for disqualification, and the alleged bias, prejudice or unfairness must be directed against the moving party or in favor of the non-moving party. *Reilly by Reilly v. Southeastern Pennsylvania Transp. Auth.*, 507 Pa. 204, 489 A.2d 1291 (1985). *Accord Smith v. Danyo*, 585 F.2d 83 (3d Cir.1978). Another important principle is that a judge cannot be disqualified merely because the judge believes in upholding the law. *Commonwealth v. Local Union 542, Int'l. Union of Operating Eng'rs*, 388 F.Supp. 155, 159 (E.D.Pa.1974).[1]

Of particular note is the Pennsylvania Supreme Court's decision in *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983), relied upon by the Governor, where the Supreme Court vacated a judgment of sentence of 2½ to 5 years imprisonment against the defendant appellant who was convicted of various crimes. The Supreme Court remanded the case for resentencing to a trial judge whose impartiality could not reasonably be questioned. The original trial judge was ostensibly overheard making derogatory remarks about the defendant, including a statement that "[w]e want to get people like him out of Potter County." In reviewing the subject of judicial recusal, the Supreme Court stated:

The party who asserts that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal. *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976). Furthermore, the "decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion." *Commonwealth v. Kane*, 199 Pa.Super.Ct. 89, 91, 184 A.2d 405, 406 (1962).

. . . .

1. Judge Leon Higginbotham, former Chief Judge of the Third Circuit Court of Appeals, was requested to recuse himself in *Local Union 542*, a civil rights action, solely because of the Judge's well-known and highly publicized commitment to the cause of civil rights.

However, we have never held and are unwilling to adopt a *per se* rule that a judge who had participated in the prosecution of a defendant may never preside as judge in future unrelated cases involving that defendant. Absent some showing of prejudgment or bias we will not assume a trial court would not be able to provide a defendant a fair trial based solely on prior prosecutorial participation. The record reveals no prejudgment or bias, but rather an evenhanded treatment of both sides.

*Id.,* 501 Pa. at 21–22, 459 A.2d at 731.

The Court does not take lightly a request for recusal, even in the present matter where the moving parties lack standing to assert the application.[2] The Court shall therefore fully examine the arguments in support of the application. Before doing so, however, the Court takes particular notice of statements contained in the Governor's memorandum of law in support of the application for recusal. The Governor states, inaccurately, that neither the School District nor Intervenors responded to the Court's November 1994 "invitation" to seek joinder and that on June 13, 1995, the Court extended another invitation to the School District to renew its motion to join the Commonwealth and the Governor.

In the November 1994 order, the Court refused to entertain joinder motions because a plan had not been submitted by the School District to eliminate racial disparities in the Philadelphia public schools. It was not until June 13, 1995, seven months later, when the Court permitted the School District and AS-PIRA to file their renewed motions for joinder, having determined that the School District's February 1995 reform plan and subsequent modifications were in compliance or substantial compliance with the Court's order, except as noted hereafter.

The Court further notes that the Governor's application failed to acknowledge, directly or indirectly, that the Court has ruled against the Commission on a central claim raised by it from the inception of administrative proceedings against the School District. The Commission consistently advanced the position that mandatory busing was required to achieve maximum feasible desegregation of the public schools. The Court rejected the Commission's demand for mandatory busing to achieve desegregation and rejected the Settlement Team Report filed with the Court on November 25, 1992, recommending mandatory busing as a remedy in this case.

The following factors, among others, are relevant to the recusal issue:

(1) The investigation, prosecution and adjudication of the Commission's complaint against the School District was completed prior to the Court's appointment to the Commission, thereby making the Court's participation in that process a legal impossibility.

(2) The matters before the Commission from December 1974 through January 1980 involved the 1972 and 1976 desegregation plans, both of which were rejected by the Commission and have no connection to the proceedings presided over by the Court. Current enforcement proceedings concern the School District's 1983 modified desegregation plan.

(3) Neither the Commonwealth nor the Governor was specifically named as a defendant in the administrative proceedings before the Commission or any of the prior enforcement proceedings before Commonwealth Court.

(4) The issue of funding of remedies to cure the discrimination against Black and Hispanic students was never adjudicated or otherwise dealt with by the Commission, and consequently, it is inconceivable that the Court gained personal knowledge of disputed evidentiary facts relevant to the current proceedings or, for that matter, relevant to any of the issues decided in the current enforcement action.

(5) The Governor has offered no evidence to prove actual bias or prejudice in

**2.** Counsel for the existing parties and Intervenors argue that the Governor possessed no authority to file his application requesting the Court's recusal because an application for recusal is available only to existing parties to the litigation. The Court has determined that ruling on the application on its merits better serves the compelling interest of justice than dismissing it on technical grounds.

favor of the Commission, the School District or Intervenors, nor has the Governor offered evidence of bias or prejudice against any of the proposed additional defendants.

(6) At the initial status conference with Counsel in 1990, the Court *sua sponte* raised her prior service on the Commission and allowed Counsel an opportunity to present any objections to the Court presiding over the case.

(7) No objections were raised by Counsel.

(8) Counsel for the Commission, School District and Intervenors have argued against recusal and accurately note that the record is devoid of any evidence of bias, prejudice or unfairness, appearance of impropriety or any other basis for recusal.

(9) The record demonstrates an even-handed treatment of the parties.

■■■ The courts of this Commonwealth have long recognized that judges are presumed to be unbiased and impartial and that they have an obligation to refuse recusal where there is no reason for recusal. *Reilly by Reilly.* See also, *Local Union 542.* Here, the Governor has failed to sustain his burden to show bias, prejudice or unfairness by the Court that would require disqualification under Canon 3C., under a decision by any court of this Commonwealth or under any other case cited by the Governor to support his application. The claims of bias, prejudice or unfairness are totally lacking in substance, and, to that extent, the Governor has failed to demonstrate any merit to the first basis asserted for recusal.

b.

The Governor has similarly failed to sustain his burden as to his second basis for recusal. The Governor cites no case law or evidence to persuade the Court that a commingling of prosecutorial, adjudicatory and appellate functions has occurred in this case and that because of such commingling, the

Commonwealth and Governor would be deprived of due process if joined as defendants in this proceeding. Neither the decision in *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992), cited by the Governor, nor other commingling decisions by this Court or the Pennsylvania Supreme Court support the Governor's position.[3]

■■■ In *Lyness* the Supreme Court held that where prosecutorial and adjudicatory functions are reposed in a single administrative agency, walls of division must be created between those functions so that any appearances of bias may be eliminated. The holding permeates all of the decisions that involve commingling of functions performed within a single administrative agency. That commingling situation does not and cannot exist here for two fundamental reasons: The Court never served in a prosecutorial role as a Commissioner nor as an attorney for the Commission, and the tribunals in the case sub judice involve an administrative agency and an appellate court, two separate and distinct bodies. Moreover, the moving parties in the commingling cases were parties to the proceedings before the agency, another fact absent in the case sub judice. As mentioned, at no time did the Commission prosecute or adjudicate any issue against the Governor related to the funding of remedies to cure the discrimination found to exist against Black and Hispanic students attending the public schools.

The memorandum of law in support of the application states that the Commonwealth and Governor do not question the integrity of the presiding judge. Yet, the Governor requests the Court to simply step aside after presiding over extensive trial proceedings in this case and issuing a series of orders directed toward curing the unlawful racial discrimination that exists in the public schools. The Governor's application comes at a time when a full record has been made showing that Black and Hispanic children have been denied an equal educational opportunity within the public schools; when the Court

---

**3.** *See also Stone and Edwards Ins. Agency, Inc. v. Department of Insurance,* 538 Pa. 276, 648 A.2d 304 (1994); *Cooper v. State Board of Medicine,* 154 Pa.Cmwlth. 234, 623 A.2d 433, *appeal de-* *nied,* 535 Pa. 676, 636 A.2d 635 (1993); and *Batoff v. Bureau of Professional and Occupational Affairs,* 158 Pa.Cmwlth. 267, 631 A.2d 781 (1993).

finally has before it a plan that is in compliance or substantial compliance with the Court's remedial order;[4] when all eligible minority children are afforded, for the first time, an opportunity to attend full-day kindergarten; and when other substantial remedial steps are underway directed toward providing Black and Hispanic students in racially isolated schools a level of education to which they are and have been entitled under the laws of this Commonwealth.

In *Crawford's Estate*, 307 Pa. 102, 109, 160 A. 585, 587 (1931), the Supreme Court stated that:

> [C]auses may not be unfairly prejudiced, unduly delayed, or discontent created through unfounded charges of prejudice or unfairness made against the judge in the trial of a cause. It is of great importance to the administration of justice that such should not occur. If the judge feels that [she] can hear and dispose of the case fairly and without prejudice [her] decision will be final unless there is an abuse of discretion. This must be so for the security of the bench and the successful administration of justice. Otherwise, unfounded an oft-times malicious charges made during the trial by bold and unscrupulous advocates might be fatal to a cause, or litigation might be unfairly and improperly held up awaiting the decision of such a question or the assignment of another judge to try the case. *If lightly countenanced, such practice might be resorted to, thereby tending to discredit the judicial system.* (Emphasis added.)

The Governor may not be permitted to unduly prejudice or further delay the ultimate and final resolution of this litigation on behalf of minority children denied an equal educational opportunity; the Governor may not be permitted to improperly or unfairly hold up this litigation by seeking removal of the presiding judge; and the Governor may not be permitted by his actions to thwart "the security of the bench and the successful administration

of justice." To that end, the Governor's request for recusal is denied.

## II.

## JOINDER

### Issues

The Court held in its February 4, 1994 opinion and order that the School District has failed to desegregate the public schools by all feasible means and that the School District continues to maintain a racially segregated school environment where all students do not receive an equal educational opportunity mandated by the laws of this Commonwealth. *HRC VI*. The School District has moved for joinder of the Commonwealth and Governor to ensure compliance with the Court's remedial order and states that as a creature of the legislature, the School District is an agency for purposes of administering the Commonwealth's constitutional duty to maintain a thorough and efficient system of public education. Article III, § 14 of the PA. Const. establishes the government's duty: "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth."

The School District contends that it cannot fully comply with the Court's order if the Commonwealth and Governor are not joined in this proceeding to finance the costs necessary to remedy the racial disparities found to exist within the public schools. The School District notes that the Commonwealth has the primary obligation to provide adequate public education and equal educational opportunity and that, under the PA. Const., the Governor has an obligation to recommend education spending to the General Assembly, to approve appropriations voted on by the legislature and to supervise the executive departments that administer state regulations and programs governing the School District. The School District has no authority to levy taxes on its own.

---

4. Although various items remain to be resolved pursuant to the June 13, 1995 order pertaining principally to the organizational structure and expenditure of funds, the Court determined that these items would not foreclose the School District and ASPIRA from filing their renewed motions for joinder.

In its renewed motion for joinder, Intervenor ASPIRA adds that under the Philadelphia Home Rule Charter, the Mayor of Philadelphia has the responsibility to submit a budget setting taxes to be levied within the City and that the Mayor's approval is necessary for all revenue and appropriation measures, including revenue provided to the School District. ASPIRA contends that there is no alternative statutory procedure available to compel the School District's funding sources to meet their obligations to provide sufficient funds to the School District to meet its obligations under the Court's order and that joinder of the Commonwealth and its Governor and the City and its Mayor will bring before the Court all parties necessary to render complete relief in this case.

The Governor admits that the School District cannot independently levy taxes but contends that it is required to request from the City authority to levy taxes needed to balance the School District's budget pursuant to the Philadelphia Home Rule Charter, § 12.12–303(b).[5] The Governor also admits that the General Assembly froze the equalized subsidy for basic education in 1992–93 at the 1991–92 level, which resulted in reduced appropriations in the succeeding fiscal years, but he denies that the General Assembly has failed to satisfy any constitutional obligations to the School District or that the Commonwealth has underfunded education.

The Governor argues that joinder is inappropriate in this proceeding, and he contends that ASPIRA lacks standing to raise any claims against the Commonwealth or the Governor. Further, the Governor asserts that the request for additional funding from the Commonwealth is not authorized by the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951–962.2; that the Commonwealth and Governor are protected from suit by sovereign immunity; that the issue presented is a political question and therefore nonjusticiable; and that joinder would not be in the interest of judicial economy.

The Mayor contends that joinder of the City and Mayor would violate fundamental principles of due process and that the Court should defer to the Commission's determination that joinder of additional defendants is beyond the scope of this enforcement proceeding. The Mayor also contends that ASPIRA lacks standing to assert any claims against the City to fund the School District; that ASPIRA cannot assert a direct injury; that the City has violated no statute; that the Commonwealth is obligated to fund the schools; and that joining the City would be futile because ASPIRA cannot state a cause of action against the City.

The Commission opposes joinder because the Court's prior decision rejecting joinder assertedly represents the law of the case, and, absent the emergence of a new or compelling circumstance, the Court's prior decision should stand. The Commission contends that the School District should initiate a separate lawsuit against the governmental entities responsible for its funding. Nonetheless, the Commission acknowledges that additional resources may be required if the School District is to comply fully with the Court's remedial order and that ultimately the Commonwealth may be liable to fund Court-ordered desegregation efforts. However, it maintains that those issues need not be addressed in this proceeding.

### Discussion

#### a.

The Governor invokes the "law of the case" doctrine to support his claim that joinder is inappropriate, relying upon the Court's prior refusal to join the Commonwealth and Governor in this case. *See Pennsylvania*

---

5. The Governor states that the School District has the benefit of school financing from sources of taxation made available to Philadelphia that are not available to other school districts within the Commonwealth. Those sources are: Sections 1–3.3 of the Act of August 9, 1963, P.L. 640, *as amended*, 53 P.S. §§ 16101–16103.3 (taxation of those items available to the city for taxation for general revenue and certain other items);

Sections 1–12 of the First Class City and School District Corporate Net Income Tax of 1969, Act of May 29, 1969, P.L. 47, 53 P.S. §§ 16111–16122 (authorization through city ordinance to tax corporate income); Sections 1–10 of the First Class School District Liquor Sales Tax Act of 1971, Act of June 10, 1971, P.L. 153, 53 P.S. §§ 16131–16140 (authorization through city ordinance to tax liquor).

*Human Relations Commission v. School Dist. of Philadelphia (HRC V)*, 167 Pa. Cmwlth. 1, 651 A.2d 177 (1993). The doctrine formally provides that an appellate court will not, upon a subsequent appeal on another phase of a case, reverse an earlier ruling even though convinced it was in error. *Benson v. Benson*, 425 Pa.Superior Ct. 215, 624 A.2d 644 (1993), *appeal denied*, 536 Pa. 637, 639 A.2d 22 (1994). The doctrine is not an inflexible rule and should be applied with discretion.

■ The law of the case doctrine does not have the preclusive effect of res judicata and does not preclude reopening a question where there is an emergence of new evidence or compelling circumstances that justify changing the prior ruling. *Estate of Julia F. Rochez*, 146 Pa.Cmwlth. 414, 606 A.2d 563 (1992) (citing *Reamer's Estate*, 331 Pa. 117, 200 A. 35 (1938)); *Larocca v. Workmen's Compensation Appeal Board (The Pittsburgh Press)*, 140 Pa.Cmwlth. 192, 592 A.2d 757, *appeal denied*, 529 Pa. 659, 604 A.2d 251 (1991). Its purpose is to promote the goal of judicial economy, to ensure uniformity of decisions and to maintain consistency during the course of a single case. Nevertheless, where the importance of an issue dictates further consideration, the interests of judicial economy would be served by squarely addressing the issue. *Reamer's Estate; Rochez.*

In *School Dist. of Philadelphia v. Pennsylvania Human Relations Commission (HRC I)*, 6 Pa.Cmwlth. 281, 294 A.2d 410 (1972), *aff'd*, 455 Pa. 52, 313 A.2d 156 (1973), Commonwealth Court addressed the issue of financing the School District's desegregation plan:

> The Court is very sympathetic with the position of the School [District] that it is futile to require the districts to submit plans that would meet the minimum requirements of the Commission when the increased costs incident to such plans, i.e., busing, installation of cafeterias, lunch programs, etc., are beyond the financial capabilities of the districts. However, the costs cannot be determined with any accuracy until a minimum acceptable plan is submitted. Whether it can be implemented with-

in the financial capabilities of the [District], together with such support from other sources as can be generated and with any realignment of priorities, will have to be determined at that time.

*Id.*, 294 A.2d at 413. The Court rejected the School District's efforts to join the Commonwealth and Governor based upon the Court's determination that the issue of funding cannot be considered until a minimum acceptable plan is submitted by the School District.

The School District may reasonably argue that the point has arrived where, because of a confluence of circumstances, the Court should reopen the question of joinder and order the Commonwealth and Governor joined into this proceeding. Violations of law have been determined; the Court issued its November 1994 remedial order directing the School District to develop a plan to eliminate the racial disparities within the schools; the School District's remedial plans are in compliance or substantial compliance with the November 1994 directives of the Court, except for those areas referenced in n. 4, *supra*; and the School District has developed cost projections for complying with the Court's order, the validity and reasonableness of which have yet to be determined.

■ The School District continues to claim that it cannot fully remedy the unlawful conditions in the schools within its financial capabilities together with support generated from other sources and with a realignment of priorities. Because of the importance of this issue and the compelling circumstances that exist, the Court therefore is not precluded by the law of the case doctrine from reopening the joinder question. Moreover, as the Supreme Court observed in *Reamer's Estate*, judicial economy would be served by squarely addressing the issue.

b.

■ The Governor and Mayor challenge the standing of ASPIRA to file its joinder motion and argue, inter alia, that ASPIRA cannot move for joinder on grounds available only to the School District; that ASPIRA has failed to show that it can satisfy the joinder standards; and that no injury has been as-

serted by ASPIRA. To establish standing to challenge governmental action, a party need only allege an immediate, direct and substantial interest in the subject matter of the litigation. Generally, the common interest shared by all citizens and taxpayers in the administration of justice and the proper resolution of disputes does not suffice to confer standing in a controversy before the Court. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975).

▮▮▮ The challengers of governmental action must establish a causal connection between the action and their interests as taxpayers. *Sierra Club v. Hartman,* 529 Pa. 454, 605 A.2d 309 (1992). The Supreme Court has held that in special cases where denial of standing would cause some governmental action to go unchallenged, taxpayer standing must be granted. *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184 (1988); *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979). Consideration also must be given to the appropriateness of judicial relief, the availability of redress through other channels or the existence of other persons better situated to assert the claim. *See Rizzo v. City of Philadelphia,* 136 Pa.Cmwlth. 13, 582 A.2d 1128 (1990), *appeals denied,* 527 Pa. 653, 658, 593 A.2d 424, 428, and *appeal denied sub nom. Petition of Tucker,* 527 Pa. 659, 593 A.2d 429 (1991).

▮▮▮ More recently, Commonwealth Court recognized the interests of parents in protecting their parental rights in a case concerning condom distribution within the public schools. In *Parents United for Better Schools, Inc. v. School Dist. of Philadelphia,* 166 Pa.Cmwlth. 462, 646 A.2d 689 (1994), the Court rejected arguments that the parent challengers did not possess standing to file their action because their interests were shared by all parents of children within the public schools. The Court conferred standing on the parent challengers because to deny standing could mean that the most injurious and wide-spread government action would be questioned by no one. That reasoning would apply equally to ASPIRA in the matter sub judice. As a result, the Court concludes that ASPIRA possesses standing to file its joinder motion.

c.

According to the Governor, the issue of funding public schools and implementing constitutional mandates with respect to public education is a political question and, under the separation of powers doctrine, the issue is non-justiciable. The Governor further contends that the Court would make a policy decision if it ordered additional funding to the School District in violation of the separation of powers doctrine and moreover, that the case as framed in terms of the requirement for equal educational opportunity and expansion of voluntary desegregation is non-justiciable. The Governor maintains that the current proceedings have exceeded the scope of the Commission's initial order and that the goals of equal educational opportunity and voluntary desegregation were not goals addressed by the Commission and are therefore legally unenforceable standards, representing policy determinations to be made solely by the General Assembly. The Governor flatly contends that this case should have been terminated in 1976 when this Court found that racial integration of the schools was impossible to attain.

▮▮▮ When a question arises concerning a function of the separation of powers among co-equal branches of government, courts have invariably described it as a "political" question. If a question falls within this category, it is considered to be non-justiciable. *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698 (1977). The Supreme Court in *Sweeney* adopted the standards set forth in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), for determining when an issue is non-justiciable. The Court reiterated that:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without ex-

pressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.,* 473 Pa. at 510, 375 A.2d at 706.

Questions surrounding the adequacy of state financing to implement a constitutional mandate to provide public education have been found justiciable by courts in various jurisdictions. Courts have considered state constitutional provisions similar to the "thorough and efficient" clause of the Pa. Const. *See e.g.,* among other cases, *Abbott v. Burke,* 119 N.J. 287, 575 A.2d 359 (1990) ("Thorough and efficient system of free public schools"); *Edgewood Independent School Dist. v. Kirby,* 777 S.W.2d 391 (Tex.1989) ("Support and maintain an efficient system of public free schools"); *Pauley v. Kelly,* 162 W.Va. 672, 255 S.E.2d 859 (1979) ("Thorough and efficient system of free schools"); *Board of Educ. of Cincinnati v. Walter,* 58 Ohio St.2d 368, 390 N.E.2d 813 (1979) ("Thorough and efficient" system of education). Also, in *Alabama Coalition for Equity, Inc. v. Hunt,* 1993 WL 204083 (Ala.Cir.), *Opinion of the Justices No. 338,* 624 So.2d 107 (Ala.1993), the court rejected the separation of powers argument in considering the inadequate funding schemes in Alabama whose constitution provided a right to all school-age children to attend school in a "liberal system of public schools."

■ Were the Governor correct in his assertion that equal educational opportunity is merely a policy unenforceable by the courts, the Pennsylvania Supreme Court would have lacked jurisdiction to rule as it did in *Pennsylvania Human Relations Commission v. Chester School Dist.,* 427 Pa. 157, 233 A.2d 290 (1967), the seminal case in Pennsylvania on school desegregation law. It is true that the Court has no authority or power to make policy determinations or to question the wisdom of legislation. Nevertheless, the Court is empowered to interpret the law and to require execution of the law of this Commonwealth, and in this connection, the Supreme Court in *Chester School Dist.*

imposed upon school districts the duty to provide equal educational opportunity to all students attending the public schools and to take affirmative steps to initiate remedial programs to overcome the effects of unlawful discrimination, even where it resulted from de facto segregation.

■ Equal educational opportunity must be provided by law to the school children of this Commonwealth, and this standard is not a policy that is set by the Court. The Human Relations Act prohibits discrimination on account of race in places of public accommodation; therefore, Black and Hispanic students in racially isolated schools must receive educational opportunity equal to those provided to white students. In *Danson v. Casey,* 484 Pa. 415, 399 A.2d 360 (1979), the Court stated that Art. III, § 14 of the PA. Const. imposes a duty upon the legislature to provide equal educational opportunity to the children of this Commonwealth. Further, in *Pennsylvania Human Relations Commission v. School Dist. of Philadelphia (HRC II),* 23 Pa.Cmwlth. 312, 352 A.2d 200 (1976), *aff'd,* 480 Pa. 398, 390 A.2d 1238 (1978), this Court clearly stated that any desegregation effort by the School District must also include educational content, and the Court did not limit the Commission's authority in these cases solely to the racial integration of students.

■ The standards for determining non-justiciability cannot be satisfied upon the record here. Access to equal educational opportunity and expansion of voluntary desegregation efforts are subjects within the Commission's statutory authority to order and are judicially definable, manageable and enforceable standards. Enforcement of those standards is not committed solely to the General Assembly; they do not involve policy determinations by the Court, nor is enforcement of these standards for non-judicial discretion. It is possible for the Court to resolve the issues in this case while at the same time showing respect for a coordinate branch of government, and none of the remaining factors articulated in *Baker v. Carr* exist to defeat justiciability of the issues before the Court. In essence, the issues here are justiciable, and a ruling by the Court

would not offend the separation of powers doctrine.[6]

## d.

The School District relies upon Pa.R.C.P. Nos. 2232(c) and 2252(a) as authority for joining the Governor. Rule 2232(c) provides:

At any stage of an action, the court may order the joinder of any additional person who could have joined or who could have been joined in the action and may stay all proceedings until such person has been joined. The court in its discretion may proceed in the action although such person has not been made a party if jurisdiction over him cannot be obtained and he is not an indispensable party to the action.

Rule 2252(a) provides:

Except as provided by Rule 1706.1, any defendant or additional defendant may join as an additional defendant any person, whether or not a party to the action, who may be

(1) solely liable on the plaintiff's cause of action, or

(2) liable over to the joining party on the plaintiff's cause of action, or

(3) jointly or severally liable with the joining party on the plaintiff's cause of action, or

(4) liable to the joining party on any cause of action arising out of the transaction or occurrence or series of transactions or occurrences upon which the plaintiff's cause of action is based.

 The Governor asserts that Rule 2232(c) authorizes the Court to order joinder of persons who could have been joined as parties by the plaintiff when the action was commenced but who were not joined, and not otherwise. The interpretation advanced for Rule 2232(c) is contrary to the plain language of that Rule and is overly restrictive. Although Rules 2251–2274 provide for joinder on motions by defendants, Rule 2232(c) expressly authorizes joinder on the court's own motion, at any stage of the proceedings.

 As for the lateness of the requested joinder, the Governor argues that joinder of a party late in the proceedings is properly denied where it will prejudice any party and delay the trial of the case. The Governor asserts that joinder 23 years after the commencement of these proceedings will result in such prejudice and also maintains that none of the prior determinations will be binding, so that the Governor will be free to relitigate all prior determinations, resulting in substantial delay in the resolution of these proceedings. This Court notes that, as for the timeliness of a motion for joinder by a defendant pursuant to Rule 2253, the extent of the delay beyond the 60 days allowed by the rule is not the sole consideration. "The length of the delay must be viewed in the context of the particular case." *Zakian v. Liljestrand,* 438 Pa. 249, 256, 264 A.2d 638, 642 (1970).

In *Lower Frederick Township v. Clemmer,* 518 Pa. 313, 543 A.2d 502 (1988) (plurality opinion), the Supreme Court approved joinder on the chancellor's own motion under Rule 2232(c), where owners of property involved in a zoning dispute transferred it during the pendency of enforcement proceedings. In *York–Adams County Constables Ass'n v. Court of Common Pleas of York County,* 81 Pa.Cmwlth. 566, 474 A.2d 79 (1984), where an association sought a declaratory interpretation of provisions of an Act relating to remuneration of constables, this Court concluded that the county commissioners were not an absent indispensable party but they were necessary, that is, their presence was required in order to completely resolve the controversy and render complete relief. This Court ordered the Commissioners joined on its own motion pursuant to Rule 2232(c).

 Concerning the length of the delay, there is no question that cases involving the desegregation of major urban school systems are extraordinary and are often of long duration. Under the circumstances involved in

---

**6.** Equitable remedies may be fashioned by the Court to suit the circumstances of the case, and the Court has power to devise a remedy to fit the circumstances and relations of the parties. *Jack-*

*son v. Hendrick,* 457 Pa. 405, 321 A.2d 603 (1974). *Also see Rankin v. School Dist. of Pittsburgh,* 33 Pa.Cmwlth. 129, 381 A.2d 195 (1977).

this extraordinary case, a plan that is in substantial compliance with the remedial order of the Court has only recently come into being. Questions concerning funding of such a plan therefore never were ripe for consideration until now. Consequently, the joinder of the Governor at this time will neither prejudice him nor unduly delay the proceedings.

The Mayor raises arguments based on interpretation of the joinder rules similar to those advanced by the Governor. In addition the Mayor argue that ASPIRA has not pleaded or argued that the Mayor is a necessary party to this action, relying primarily on *In re Emery*, 138 Pa.Cmwlth. 668, 589 A.2d 283 (1991). There this Court held that the Department of Public Welfare was not a necessary party in an action by a mentally handicapped person to be moved to a less restrictive facility, because the commitment modification could be made independently of a determination of whether the county or the state was obliged to pay for the new commitment. However, the Court has determined that the question of funding should be addressed in the current proceeding for the reasons articulated in this opinion, and the Court need not further address this issue.

 Finally, the Commission's enforcement petition is filed in this Court's original jurisdiction under 42 Pa.C.S. § 761. This proceeding is not an appeal from a Commission order. *Commonwealth v. Fee*, 116 Pa. Cmwlth. 183, 540 A.2d 1385 (1988) *rev'd on other grounds*, 523 Pa. 377, 567 A.2d 645 (1989). While an action proceeds through Commonwealth Court in its original jurisdiction, the Pennsylvania Rules of Civil Procedure shall govern, so far as they may apply. Pa.R.A.P. 106; *Lexington Ins. Co. v. Commonwealth*, 116 Pa.Cmwlth. 259, 541 A.2d 834 (1988). In *Pennsylvania Human Relations Commission v. Scranton School Dist.*, 510 Pa. 247, 507 A.2d 369 (1986), the Supreme Court merely held that there is no right to a direct appeal from Commonwealth Court orders in agency enforcement proceedings. The Supreme Court did not state, as contended by the Governor, that enforcement proceedings are filed in this Court's appellate jurisdiction. *See also Pennsylvania Human*

*Relations Commission v. Lansdowne Swim Club*, 515 Pa. 1, 526 A.2d 758 (1987).

e.

 The paramount rights guaranteed to a defendant are that of notice and the right to be heard at a meaningful time and in a meaningful manner before judgment is rendered. *Meritor Mortgage Corp.–East v. Henderson*, 421 Pa.Superior Ct. 339, 617 A.2d 1323 (1992). The issue before the Court concerning the Governor and Mayor would be to what extent they may be liable for paying costs necessary to comply with the Court's remedial order. That is the only proceeding for which due process rights must be afforded. The findings, conclusions and determination of the Court in *HRC VI* may not be relitigated in the remedial phase of this proceeding.

In *United States v. State of Arkansas*, 791 F.2d 1573 (8th Cir.1986), the court reversed in part a district court order entered in the remedial stages of a desegregation case requiring the state to finance the costs incurred by local school districts in desegregating their schools. The case was remanded to the district court because the judgment was entered against the state without holding an evidentiary hearing on the issue of the state's liability. The court held that the state could not be made liable for payment without providing it with a hearing. "Although we are uncertain what evidence the State might present to insulate itself from liability, we agree with the State's argument that the due process clause requires that the State have an opportunity to be heard before liability may be imposed." *Id.*, 791 F.2d at 1577 (citing among others *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). The state of Arkansas was reinstated as a defendant in the remedial phase of the case seven years after it was originally dismissed from the action.

 The Governor and Mayor's argument that joinder at this late stage would violate concepts of procedural fairness and due process are simply incorrect. Notice and an opportunity to be heard before judgment, if any, is precisely what would be afforded the Governor and Mayor. Courts

are afforded broad discretion in matters of joinder, and so long as the joined parties are afforded their basic rights, the joinder should be upheld. Further, it has been argued that the Commonwealth participated throughout this proceeding through its agency, the Commission, and that any due process arguments raised as to the Governor must fail. Because of its functions, the Commission was determined to be the alter ego of the Commonwealth of Pennsylvania in *Pennsylvania Human Relations Commission v. USAir, Inc.*, 615 F.Supp. 75 (1985).

### f.

The Supreme Court has plainly stated that a school district is an agency of the Commonwealth and is a quasi corporation for the sole purpose of administering the public school system within the Commonwealth of Pennsylvania. *Walsh v. School Dist. of Philadelphia*, 343 Pa. 178, 22 A.2d 909 (1941), *cert. denied*, 315 U.S. 823, 62 S.Ct. 916, 86 L.Ed. 1219 (1942). *See also Chartiers Valley Joint Schools v. Allegheny County Board*, 418 Pa. 520, 211 A.2d 487 (1965) (reiterating previous Supreme Court holding that a school district has only those powers granted to it by statute). There can be no dispute that the School District acts as an agency of the Commonwealth and that under the unique statutory scheme in Pennsylvania governing school district operations, the School District is dependent upon state subsidy and local taxation for its funding.[7] *See, Danson.*

In *Danson*, the school district and parents of children attending Philadelphia public schools filed suit against the governor and other state officials claiming that be-

cause of inadequate revenue the school district would be forced to close early unless additional state funds were forthcoming. The Supreme Court upheld dismissal of the action but not before analyzing the statutory educational funding scheme in Pennsylvania and noting that Philadelphia is the only school district in the Commonwealth without the power to levy taxes directly. The Supreme Court held that the School District and parents failed to state a legally cognizable claim in the absence of an allegation that the School District suffered legal harm or that any school student suffered or would suffer legal injury resulting from the challenged financing scheme or that children were denied an adequate or basic education. The parties merely alleged that children were denied a normal program of educational services available to other children in Pennsylvania. In the case sub judice, the School District and ASPIRA have made various allegations that would state a legally cognizable claim.

### III.

### CONCLUSION

Finally, the burden is upon the School District and ASPIRA, not the Governor or Mayor, to show that state and local funding is inadequate to meet the School District's obligations to fully comply with mandates of the Court's remedial order. If the School District and ASPIRA sustain their burden to prove that the School District cannot fully comply with the Court's order without additional funding, it then becomes the burden of the Governor and Mayor to

---

7. In *County of Allegheny v. Commonwealth*, 507 Pa. 360, 490 A.2d 402 (1985), the Supreme Court stated that where a political subdivision can demonstrate that its resources for performing its functions on behalf of the state are clearly inadequate, it is the responsibility of the state to provide additional facilities or to allocate to the political subdivision reasonable funds to discharge the political subdivision's delegated responsibility. School districts enjoy the status of a "political subdivision" just as cities, boroughs and townships. *Wissinoming Bottling Co. v. School Dist. of Philadelphia*, 654 A.2d 208 (Pa. Cmwlth.), *appeal granted*, 541 Pa. 655, 664 A.2d 544 (1995).

Moreover, the added notion that sovereign immunity forecloses suit against the state in this case is not a valid one. There is case law to the effect that sovereign immunity is not a defense to cases where a party attempts to compel a defendant to perform a duty imposed by law upon that defendant. *McGriff v. Board of Probation and Parole*, 127 Pa.Cmwlth. 167, 561 A.2d 78 (1989). In any event, in school desegregation cases, courts have imposed liability upon states to cure the effects of segregation within public school systems. *See* e.g., *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (*Milliken II* ).

demonstrate through audit, expert testimony, discovery or otherwise that the School District possesses the capacity to comply with the Court's remedial order or that existing funding levels are sufficient to comply with the order. The Mayor will be given an opportunity to prove his claim that the state is solely liable for any additional funds required by the School District.

Based upon the foregoing discussion, the Court concludes that the Commonwealth and Governor and the City and Mayor should be joined in the remedial phase of this proceeding and enters the following order joining those parties to determine their liability, if any, to pay additional costs necessary to remedy the unlawful conditions found to exist in the Philadelphia public schools. A conference shall be convened with all Counsel within the next 30 days to review procedures and further proceedings to be held consistent with this opinion.

### ORDER

AND NOW, this 3rd day of November, 1995, upon consideration of the renewed motion of the School District of Philadelphia to join the Commonwealth of Pennsylvania and Governor Thomas J. Ridge, and the renewed motion of Intervenor ASPIRA to join the Commonwealth and Governor and the City of Philadelphia and Mayor Edward Rendell, it is hereby ordered that the Commonwealth and Governor and the City and Mayor are joined as Respondents in the above-captioned school desegregation case for the reasons stated in the foregoing opinion.

