732 A.2d 578

**PENNSYLVANIA HUMAN RELATIONS COMMISSION,**

v.

**SCHOOL DISTRICT OF PHILADELPHIA, et al.**

v.

**Commonwealth of Pennsylvania, et al.**

**Petition of Commonwealth of Pennsylvania
and Thomas J. Ridge, Governor.**

Supreme Court of Pennsylvania.

Argued Feb. 3, 1998.

Decided May 19, 1999.

Edward F. Mannino, Philadelphia, William H. Lamb, West Chester, for petitioners Com. and Governor Ridge.

Robert L. Byer, Pittsburgh, for amicus, General Assembly.

Germaine Ingram, Bruce W. Kauffman, Laura E. Vendzules, Mark J. Levin, Sheryl L. Auerbach, Lynn Rosner Rauch, Philadelphia, for respondent, School Dist. of Philadelphia.

Michael Hardiman, Philadelphia, for Pa. Human Relations Com'n.

Michael Churchill, San Jose, CA, for intervenors, Aspira, et al.

Joseph A. Dwortzky, Richard Feder, Sarah E. Ricks, Mark A. Aronchick, John H. Estey, Philadelphia, for respondents, City of Philadelphia and Mayor Rendell.

Lawrence E. Frankel, for amicus, ACLU of Pa.

Robert J. Stefanko, Pittsburgh, for amicus, Pittsburgh Public Schools.

Michael I. Levin, Huntingdon Valley, for amicus, School Boards Ass'n.

Charles W. Bowser, Philadelphia, for amici, American Found. for Negro Affairs, et al.

Richard Z. Freemann, Jr., Patricia A. Lowe, Philadelphia, for amicus, Lowell Home and School Ass'n.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

This school desegregation case is in its twenty-eighth year. It began on October 8, 1970, when the Pennsylvania Human Relations Commission (PHRC) initiated a complaint against the School District of Philadelphia (the school district) in which the PHRC alleged that the school district was unlawful-

ly segregated in violation of the Pennsylvania Human Relations Act (PHRA).[1] After investigation and hearing, the PHRC determined that the school district was unlawfully segregated by race, and ordered the school district to submit a desegregation plan. The school district appealed and Commonwealth Court affirmed the order, as modified, and remanded the matter to the PHRC for appropriate modification. On September 5, 1972, the PHRC issued an amended final order that incorporated the court-mandated modifications. All subsequent litigation has involved enforcement proceedings pertaining to the September 5, 1972 order.

The ensuing twenty-three years of litigation, including appeals, resulted in fourteen published opinions by Commonwealth Court. Then, in the twenty-fifth year of the litigation, on November 3, 1995, the Commonwealth Court ordered the Commonwealth of Pennsylvania, Governor Ridge, the City of Philadelphia, and Mayor Rendell to be joined as additional respondents, in order to adjudicate the funding of remedies. *PHRC v. School District of Philadelphia,* 667 A.2d 1173, 1188 (Pa.Cmwlth.1995).

Following the joinder, pleadings were filed in Commonwealth Court, discovery was conducted, and hearings were held. Concurrently with those proceedings, the Commonwealth and the governor filed an application for preliminary relief with this court, asking it to assume plenary jurisdiction of this matter. On July 3, 1996, we did so, ordering the Commonwealth Court judge to conclude all hearings within sixty days, to focus the hearings on the issue of desegregation, "the original issue in this matter," and to issue a final opinion within thirty days of the conclusion of the hearings then taking place. On August 20, 1996, Commonwealth Court's opinion and a purported order were filed with this court. The Commonwealth and the governor filed a motion to vacate the order. This court, on September 10, 1996, vacated the August 20, 1996 Commonwealth Court order, and divested Commonwealth Court of jurisdiction and stayed all further proceedings

1. Act of October 27, 1955, P.L. 744, as amended, 43 P.S. § 951 *et seq.*

in that court while this court exercised plenary jurisdiction over the matter.

On January 28, 1997, this court ordered briefing of the following issues: (1) whether the lower court erred in its order of November 3, 1995 joining the Commonwealth and the governor, the City of Philadelphia and the mayor, as additional respondents; (2) whether the lower court exceeded its authority in fashioning remedies to redress de facto segregation in the school district; and (3) whether an enforcement action is to be treated in Commonwealth Court's original or appellate jurisdiction.

 The salient issue is the propriety of joining the Commonwealth, the governor, the City of Philadelphia, and the mayor. This depends, essentially, on whether the proceedings in Commonwealth Court were in its original or its appellate jurisdiction.

The PHRC argues that the enforcement proceedings in Commonwealth Court were in its original, not its appellate, jurisdiction. PHRC acknowledges that *PHRC v. Scranton School District*, 510 Pa. 247, 507 A.2d 369 (1986), held that enforcement petitions filed in Commonwealth Court do not involve matters "originally commenced" in that court, and therefore no appeal as of right exists under 42 Pa.C.S. § 723(a).[2] Nevertheless, PHRC argues that enforcement proceedings, though not originally commenced in the PHRC, are yet within the original jurisdiction of Commonwealth Court. Thus, the PHRC distinguishes between proceedings "originally commenced" in the court for purposes of appealability under 42 Pa.C.S. § 723(a), and proceedings which are within the court's "original jurisdiction," arguing that the two are not coextensive. Some proceedings, PHRC claims, are in Com-

2. 42 Pa.C.S. § 723(a) provides:
 **§ 723. Appeals from Commonwealth Court**
 **(a) General rule.**—The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the Commonwealth Court entered in any matter which was originally commenced in the Commonwealth Court except an order entered in a matter which constitutes an appeal to the Commonwealth Court from another court, a district justice or another government unit.

monwealth Court's original jurisdiction though not originally commenced in that court, including enforcement proceedings, for example.

This distinction is meaningful in determining what rules of procedure govern the proceedings. The Pennsylvania Rules of Appellate Procedure, for example, provide:

### RULE 103. SCOPE OF RULES

These rules govern practice and procedure in the Supreme Court, the Superior Court and the Commonwealth Court, including appeals to such courts from lower courts and the procedure for direct review in such courts of determinations of government units.

. . . .

### RULE 106. ORIGINAL JURISDICTION MATTERS

Unless otherwise prescribed by these rules the practice and procedure in matters brought before an appellate court within its original jurisdiction shall be in accordance with the appropriate general rules applicable to practice and procedure in the courts of common pleas, so far as they may be applied.

Pa.R.A.P. 103 and 106.

It is apparent from Rule 106 that if an enforcement proceeding is within the original jurisdiction of Commonwealth Court, then the Pennsylvania Rules of Civil Procedure apply, whereas if an enforcement proceeding is a direct review of the determination of a government unit, such as PHRC, then the Rules of Appellate Procedure govern the proceeding in Commonwealth Court. Although PHRC's argument seems to be logically sound—that "originally commenced" in 42 Pa.C.S. § 723(a) for appealability purposes need not be identical to "original jurisdiction" in the Rules of Appellate Procedure for determining which rules of procedure apply—we nevertheless reject the argument. The PHRC admits that there is confusion in this area of procedure. The brief of amici curiae speaking for the General Assembly of Pennsylvania goes

further, arguing that *PHRC v. Scranton, supra,* and *Pennsylvania Department of Aging v. Lindberg,* 503 Pa. 423, 469 A.2d 1012 (1983) compel the conclusion that this enforcement proceeding falls in the Commonwealth Court's appellate jurisdiction, noting: "To decide otherwise would be untenable. There must be symmetry between [the Pennsylvania Supreme] Court's allocatur and direct appeal jurisdiction and the Commonwealth Court's appellate and original jurisdiction or confusion would reign among practitioners." We agree that this is so. *PHRC v. Scranton, supra,* held that enforcement proceedings, in the terminology of 42 Pa.C.S. § 723(a), are not originally commenced in the Commonwealth Court, but did not decide whether enforcement proceedings are within the "original jurisdiction" of Commonwealth Court in the terminology of 42 Pa.C.S. § 761. We now hold that the nature of enforcement proceedings as well as a desirable consistency warrant the conclusion that just as enforcement proceedings are not originally commenced in Commonwealth Court, they are also in the appellate, rather than the original, jurisdiction of the court.

■ It then follows that the rules of appellate procedure, rather than the rules of civil procedure, govern enforcement proceedings in Commonwealth Court. The application of the appellate rules is decisive, for the rules of appellate procedure, unlike the rules of civil procedure, do not permit joinder of additional parties. *See, e.g., North Cambria Fuel Co. v. DER,* 153 Pa.Cmwlth. 489, 621 A.2d 1155, 1162 n. 12 (1993) *aff'd without opinion,* 538 Pa. 377, 648 A.2d 775 (1994) (EHB lacks authority to allow joinder of third party in appeal of order).

■ The parties to an enforcement proceeding are limited to the parties before the administrative agency. The procedural rules applicable to administrative agencies, the General Rules of Administrative Practice and Procedure, 1 Pa.Code, Part II, and 25 Pa.Code, Chapter 21, do not provide for compulsory joinder of third parties. Since additional parties could not have been joined in the proceeding before the PHRC in this case, it was an unwarranted encroachment on the

jurisdiction of the PHRC and an unauthorized expansion of an enforcement proceeding for Commonwealth Court to order the joinder of additional parties.

■ In addition to improper joinder of parties, it appears that Commonwealth Court misapprehended the nature and scope of enforcement proceedings. The statutory authority for enforcement and judicial review of a PHRC order does not permit the consideration of new claims not entertained by the PHRC. The procedure is as follows:

> The complainant, the Attorney General or the [Pennsylvania Human Relations] Commission may secure enforcement of the order of the Commission or other appropriate relief. When the Commission has heard and decided any complaint brought before it, enforcement of its order shall be initiated by the filing of a complaint in court, together with a transcript of the record of the hearings before the Commission. . . .

43 P.S. § 960. The language of the statute does not permit the PHRC to discard its own order and to seek relief substantially different from what was included in its order binding the school district.[3] The statute does not permit a new claim to be brought, during an enforcement proceeding, against an original party nor against an entity which was not a party in the original proceedings before the PHRC.[4]

The PHRC entertained no claim against the Commonwealth, the governor, the City of Philadelphia, nor the mayor in its desegregation proceedings culminating in the September 25, 1972 PHRC order. Commonwealth Court had no basis to

---

**3.** The statutory authorization of "other appropriate relief" does not release the court from its obligation to defer to the administrative order. Rather, to be "appropriate," relief must be tailored to elicit or effectuate compliance with the administrative order; it does not include relief substantially different from that ordered by the PHRC, and certainly does not include relief against a third party.

**4.** Commonwealth Court determined that a judicial mandate of funding by the state legislature is not a nonjusticiable political question. *PHRC v. School District of Philadelphia*, 667 A.2d 1173, 1184 (1995). We need not decide the issue, due to our decision to vacate the joinder of the Commonwealth respondents on other grounds.

consider a claim not considered by the PHRC,[5] let alone the enforcement of an order against strangers to the proceedings. Thus it was error for Commonwealth Court to join the Commonwealth, the governor, the City of Philadelphia, and the mayor as additional respondents.

The order of the Commonwealth Court dated November 3, 1995, ordering the joinder of the Commonwealth, Governor Ridge, the City of Philadelphia, and Mayor Rendell, is vacated.

We will remand for such continued enforcement proceedings in Commonwealth Court as are consistent with this opinion.

Order of Commonwealth Court dated November 3, 1995 vacated. Case remanded for further enforcement proceedings consistent with this opinion. Jurisdiction relinquished.

Justice NIGRO files a concurring opinion.

Justice ZAPPALA concurs in the result.

NIGRO, Justice, concurring.

I concur in the result reached by the majority. I write separately, however, because I cannot agree that the Commonwealth Court did not have original jurisdiction in this enforcement proceeding. In an enforcement proceeding the inquiry is limited to whether the order itself was complied with, not whether the order was properly entered on the merits. Due to its unique nature, I would find that an enforcement proceeding falls within the Commonwealth Court's original jurisdiction. Nevertheless, I agree with the majority that, in this case, joinder of the Commonwealth, Governor Ridge, the City of Philadelphia, and Mayor Rendell was improper, not only because it infused a new claim into the case but, because joinder of these parties was not necessary for the Commonwealth Court to enforce the Commission's order.

5. Commonwealth Court recognized that "[t]he issue of funding of remedies ... was never adjudicated or otherwise dealt with by the [PHRC]...." *PHRC v. School District of Philadelphia, supra,* 667 A.2d at 1178.