32 A.3d 639 (2011)
COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellee
v.
CROMWELL TOWNSHIP, HUNTINGDON COUNTY, Appellant.
No. 74 MAP 2009.
Supreme Court of Pennsylvania.
Argued September 15, 2010.
Decided November 23, 2011.
*641 Lowell Rector Gates, Sarah Elaine McCarroll, Gates, Halbruner & Hatch, P.C., Clifton R. Guise, Gates, Halbruner, Hatch & Guise, P.C., Lemoyne, for Cromwell Township, Huntingdon County.
David Russell Getz, Wix, Wenger & Weidner, P.C., Harrisburg, for Appellant Amicus Curiae, PA State Association of Township Supervisors.
Martin R. Siegel, PA Department of Environmental Protection, Harrisburg, Susan P. Shinkman, Pittsburgh, Dennis A. Whitaker, *642 Harrisburg, for Department of Environmental Protection.
BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN JJ.

OPINION
Justice ORIE MELVIN.
This is an appeal by Cromwell Township ("Township") from a July 8, 2009 Commonwealth Court order implementing a March 9, 2009 order sentencing Cromwell Township supervisors to three to six months imprisonment for contempt.

I.
The procedural history of this case is as follows. Section five of the Pennsylvania Sewage Facilities Act,[1] 35 P.S. § 750.5, requires municipalities to submit an officially-adopted, comprehensive plan for sewage services to the Pennsylvania Department of Environmental Protection[2] ("DEP"). In general, the plan must describe "existing sewage disposal methods, take into consideration existing plans for population growth and land development, [and] provide for future needs by specifying plans for sewage treatment facilities that will adequately prevent the discharge of untreated or inadequately treated sewage or other waste into any waters." Delaware Riverkeeper v. Dept. of Environmental Protection, 879 A.2d 351, 352 n. 2 (Pa.Cmwlth.2005) (citation omitted).
In August 2000, DEP approved Township's Act 537 Sewage Facilities Plan ("Plan"). The Plan provided for public sewers to be constructed from the Village of Pogue to Rockhill Furnace Borough and for construction of a treatment facility. Implementation of the Township sewage collection and treatment system involved the: 1) acquisition of several million dollars of financing; 2) creation of numerous easements; 3) passage of multiple ordinances; and 4) advertising, opening, and awarding of construction bids. Although various sewage disposal problems existed, Township concluded the Plan was too expensive to implement. Thus, despite requesting several extensions that DEP granted, Township failed to implement the Plan. On May 24, 2002, DEP ordered Township to implement its August 2000 Act 537 Plan. This order was not appealed.
Cromwell Township surrounds Orbisonia and Rockhill Boroughs, which are adjoining boroughs in Huntingdon County, Pennsylvania. In January 2005, the Orbisonia Rockhill Joint Municipal Authority ("ORJMA"), an authority organized pursuant to the Municipalities Authorities Act, 53 Pa. C.S. § 5601 et seq., operated the public sewage system for residents of both boroughs. At that time, ORJMA was experiencing an overload in its wastewater treatment plant; concurrently, Township was endeavoring to execute its Plan because DEP was threatening to impose a daily penalty for failure to do so. Township Board of Supervisors ("Board") Chairman Ted Whitsel approached ORJMA and proposed a joint venture that would increase the capacity of ORJMA's plant and, simultaneously, decrease the anticipated cost to Township residents for their sewage treatment.
*643 ORJMA pursued a feasibility study in August 2005. Following public meetings in the ensuing weeks, Township executed a sewage treatment agreement ("Agreement") with ORJMA on November 15, 2005. One month later, Township amended the Plan to implement that Agreement, which it then submitted to DEP. On January 12, 2006, DEP approved the Plan's amendment. Concurrently, however, membership of the Township's Board changed when David Booher, who openly opposed the Plan, was elected to a six-year term and Lewis Fleck, who was appointed to fill a vacancy, joined the Board. Chairman Whitsel resigned as a supervisor in December 2005, and it appears he was replaced by Howard Clark.
The reconstituted Board thus repealed the ordinances required under the Agreement. Township then appealed DEP's January 12, 2006 approval of the Plan's amendment regarding the ORJMA Agreement to the Environmental Hearing Board ("EHB"),[3] and ORJMA and Township stopped cooperating. DEP withdrew its January 12, 2006 approval of the Plan's amendment, thereby placing the Township once again under the obligations imposed by DEP's May 24, 2002 order to implement Township's August 2000 Act 537 Plan. The EHB dismissed Township's appeal as moot.
On December 19, 2007, DEP filed a "Petition for Enforcement of Administrative Order" in the Commonwealth Court to enforce the May 24, 2002 order directing Township to implement its Act 537 Sewage Facilities Plan. One month later, on January 22, 2008, the Commonwealth Court granted DEP's petition, ordered Township to comply with DEP's May 24, 2002 administrative order, and indicated that DEP "may seek a contempt citation through this Court and appropriate proceedings shall be scheduled." Order, 1/22/08, at 1. Over the ensuing seven and one-half months, when Township failed to comply with the Commonwealth Court's January 22, 2008 order as well, DEP filed a petition for contempt on August 11, 2008. DEP requested that the Commonwealth Court 1) impose a daily $300 fine against Township and each supervisor until Township complied with the January 22, 2008 order, retroactive to June 1, 2008; 2) award DEP costs and attorneys' fees; and 3) set a timeline of conditions for Township to purge its contempt. DEP Contempt Petition, 8/11/08, at 6. Township filed an answer on September 12, 2008. Following a hearing on DEP's contempt petition on September 16, 2008, the Commonwealth Court found the members of the Board of Supervisors in contempt[4] and concluded that Township had failed to comply with its January 22, 2008 order. The Commonwealth Court directed all members of the Board to appear for sentencing on December 4, 2008. With regard to the ability of Board members to purge themselves of *644 contempt, the Commonwealth Court instructed that it would "consider efforts to comply with the terms of the Court's order dated January 22, 2008." Order, 9/16/08, at 1-2.
The Commonwealth Court held additional hearings on December 4, 2008 and March 9, 2009. Following the March 9 hearing, the court concluded that the three Board supervisors had not purged contempt. Despite the fact that DEP sought only the imposition of fines against Township and the supervisors, Commonwealth Court Judge Keith B. Quigley sentenced David Booher, Lewis Fleck, and Howard Clark to undergo three to six months imprisonment, but he delayed their incarceration. The Commonwealth Court further urged the supervisors to "purge themselves of contempt by complying with the conditions previously directed in earlier orders of this Court." Order, 3/9/09, at 1.
Following a hearing on July 8, 2009, the Commonwealth Court ordered the implementation of its March 9, 2009 order imposing sentence against David Booher, Lewis Fleck, and Howard Clark. Sometime between the March 9, 2009 hearing, when sentence was imposed, and the July 8, 2009 hearing, when the Commonwealth Court implemented the imposition of sentence, however, Howard Clark had resigned. Judge Quigley concluded that Clark was beyond the power of the Court to offer purge conditions.
The court's comments on July 8, 2009, following the hearing, in their entirety, are as follows:
THE COURT: All right. I've heard what everybody has to say here, and I have a few conclusions based on my experience with the record in this case. And I had said many times that when it comes to the relationship between the government, in this case represented by Department of Environmental Protection, and municipalities, that that relationship can be sometimes strained, can be sometimes confused, can be sometimes and usually is ultimately satisfactory, sometimes even amicable. But I am certainly no stranger to seeing conflicts.
Now, if you know anything about where I come from, the central part of this state, nobody can be more sympathetic to the plight of municipalities than I from a philosophical point of view. I think I attempted to express that position on numerous occasions in dealing with this situation.
On the other hand, I prefaced our proceedings here today by indicating that the authority of the Court is extremely important to orderly government, a system of government under law. And the issue here today was a narrow issue as to whether or not the supervisors of the township hadhad complied withor sufficiently took efforts to purge civil contempt.
In civil contempt situations, the Court is always required to basically give the, quote/unquote, keys to the jailhouse by giving the persons who stand in contempt the ability to remedy the contemptuous or contumacious conducts or lack thereof, as the case may be.
In this case, I attempted to do that, specifically by my order of March 9, 2009. And inquiring into the efforts of the township and its representatives at this time to comply with reasonable purge conditions, what I've seen basically is what I've seen all along, that the last-minute efforts, quote/unquote efforts, that I think we permitted on occasions to put off a final day of reckoning by attempting to avoid this day are inadequate.
I don't thinkI think that the efforts of the township are absolutely inadequate *645 to address the issue of contempt as it exists today. I find that under no circumstances is this township going to implement anything overother than an on-lot system, which basically is a system that exists today. I accordingly find no credible efforts at all to purge contempt.
Now we have one supervisor who has resigned. That supervisor is beyond the power of the Court to offer purge conditions. And accordingly, whereas the contempt adjudication will still exist, no imposition of a sentence will occuror execution of sentence will occur in his case. Which one is that incidentally? Who resigned?
[Township counsel]: Howard Clark
THE COURT: Howard Clark. Okay. So we have remaining Supervisor Mr. Booher and
[Township counsel]: And Mr. Fleck.
THE COURT: Okay. All right. This will be an order.
And now, as to Supervisors David Booher and Lewis Fleck, this Court's order of March 9, 2009, directing the imposition of a prison term of not less than three months nor more than six months be implemented with sentence to take place in the Dauphin County Prison and to be implemented immediately, period.
Paragraph. The terms to purge are substantially in accordance with those discussed in this Court's earlier letteror earlier order, period.
Paragraph. No additional documentation will be necessary to effect the execution of this order, and the Warden of the Dauphin County Prison is directed to accept these individuals for execution of sentence forthwith.
By the Court.
That concludes these proceedings. We're adjourned.
N.T., 7/8/09, at 42-44.[5] Mr. Fleck quickly resigned from the Board after the hearing on July 8, 2009, and the court vacated his sentence later that day. Ultimately, only David Booher was incarcerated.
On July 10, 2009, Township filed a motion for the release of David Booher, which the Commonwealth Court denied that day. Four days later, Township sought reconsideration of the July 8, 2009 order, which the Commonwealth Court denied on July 24, 2009. Mr. Booher filed an emergency petition for writ of habeas corpus in this Court on July 17, 2009, which we denied on July 30, 2009. Commonwealth ex rel. Booher v. DeRose, No. 123 MM 2009. Upon his subsequent resignation[6] from the Board on August 14, 2009, Mr. Booher was released from Dauphin County Prison after serving thirty-six days.
Township filed the instant notice of appeal on August 10, 2009.[7] Pursuant to Pa.R.A.P. 1925(a), the Commonwealth Court filed an order, not an opinion, representing that the reasons for the July 8, 2009 order appeared in the transcript of *646 that date, which we quoted supra. Pa.R.A.P. 1925(a) Order, 8/11/09, at 1. The Pennsylvania State Association of Township Supervisors[8] filed a brief as Amicus Curiae on December 15, 2009 in support of Township. On November 4, 2009, we deferred the question of jurisdiction to the merits stage and directed the parties to brief the following three jurisdictional issues, in addition to the substantive claims Appellant Township sought to raise.
(1) Whether the Commonwealth Court's July 8, 2009 order is appealable as of right under 42 Pa.C.S. § 723(a) or is subject to discretionary review under 42 Pa.C.S. § 724(a)? The parties are to discuss this Court's decisions in Pennsylvania Human Relations Comm'n v. School District of Philadelphia [557 Pa. 126], 732 A.2d 578 (Pa.1999); Pennsylvania Human Relations Comm'n v. Lansdowne Swim Club [515 Pa. 1], 526 A.2d 758 (Pa.1987); and Pennsylvania Human Relations Comm'n v. Scranton School District [510 Pa. 247], 507 A.2d 369 (Pa.1986).
(2) Whether the conclusion that the Commonwealth Court's July 8, 2009 order is not appealable under 42 Pa. C.S. § 723(a) violates the right to an appeal conferred in the Pennsylvania Constitution, Art. 5, Section 9 and 42 Pa.C.S. § 5105?
(3) Whether this appeal falls within any of the exceptions to the mootness doctrine?
Order, 11/4/09, at 1; see also Township's brief at 4(A-C). The substantive issues Township raises are as follows:
Did the Commonwealth Court violate the federal and Pennsylvania Constitutions when it sentenced two Township Supervisors to imprisonment for contempt when the Township Supervisors were acting in their legislative capacity?
Did the Commonwealth Court violate the federal and Pennsylvania Constitutions when it sentenced two Township Supervisors to imprisonment by not first attempting less restrictive means?
Did the Commonwealth Court err in sentencing the Township Supervisors to imprisonment for civil contempt when the Township Supervisors were unable to purge themselves of the civil contempt?
Township's brief at 5(D-F).

II.
The question whether a court has jurisdiction is de novo, and the scope of review is plenary. It may be raised at any time in the course of the proceedings, including by a reviewing court sua sponte. Com., Office of Attorney General ex rel. Corbett v. Locust Township, 600 Pa. 533, 968 A.2d 1263, 1269 (2009). Our initial determination concerns whether Township is entitled to our review in this matter by right or may seek appeal only by discretion. The Commonwealth Court's jurisdiction may be either original[9] or appellate,[10] and it is inevitable that the parameters of the two may blur on occasion. Nearly twenty-eight years ago, we advised litigants as follows:
In cases of possible doubt as to whether a matter should be addressed to us by way of appeal or allocatur, we suggest *647 in the exercise of our supervisory power that requests for our review be presented fully in a manner analogous to that set forth for a petition for allocatur instead of as in a simple notice of appeal.10 In such cases the party requesting relief can seek it alternatively under Sections 723 and 724. Such procedure will make it more likely that the matter will receive our proper attention, whether it is correctly an appeal as of right or by grace, and at the same time forestall possible dismissal for lack of jurisdiction at a time when it is too late to seek allocatur.
10 Such appeals should include a concise statement of the grounds on which the jurisdiction of this Court and the statutory provision believed to confer jurisdiction is invoked and, if deemed necessary, the cases believed to sustain jurisdiction. See Rules of the Supreme Court of the United States 12.3 and 15.
O'Brien v. Commonwealth of Pennsylvania, State Employes' Retirement System, 503 Pa. 414, 469 A.2d 1008, 1012 (1983). Township and DEP seemingly assert different bases for our jurisdiction to entertain this appeal, although Township confusingly avers DEP's position in the alternative without presenting any argument in support. See Township's brief at 10. Township largely argues that this matter is appealable as of right under 42 Pa.C.S. § 723(a) because "the Incarceration Order is not an enforcement order, but an order imposing sanctions on the Township Supervisors." Township's brief at 11. Section 723 provides, in pertinent part:
§ 723. Appeals from Commonwealth Court
(a) General rule.The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the Commonwealth Court entered in any matter which was originally commenced in the Commonwealth Court except an order entered in a matter which constitutes an appeal to the Commonwealth Court from another court, a magisterial district judge or another government unit.
In suggesting that the order appealed is not an enforcement order, Township attempts to distinguish relevant case law asserted by DEP and contends that the instant matter, instead, is analogous to Pennsylvania Human Relations Commission v. Lansdowne Swim Club, 515 Pa. 1, 526 A.2d 758 (1987). Therein, the Human Relations Commission ("HRC") sought to compel the Lansdowne Swim Club to provide various documents during HRC's investigation of a complaint of racial discrimination against the swim club. When the club provided only a partial response to HRC's request, the commission issued a subpoena duces tecum. Lansdowne Swim Club continued to refuse to produce the documents, and HRC petitioned for enforcement of the subpoena in the Commonwealth Court. Following an evidentiary hearing, the Commonwealth Court denied the petition, and HRC filed a direct appeal with this Court pursuant to 42 Pa.C.S. § 723(a).
We determined that jurisdiction in Lansdowne was vested in this Court as of right pursuant to section 723(a) of the Judicial Code, holding that the subpoena enforcement proceeding therein, which was auxiliary to the commission's exercise of its investigatory function, differed "from that in actions for enforcement of final agency orders issued after hearings." Lansdowne, 526 A.2d at 760. We further noted that in the Lansdowne proceeding, the action was brought by a Commonwealth agency, and the Commonwealth Court's jurisdiction was original and concurrent with the courts of common pleas. Since, in that case, HRC elected to bring the enforcement action in the Commonwealth *648 Court, we stated that direct appeal to this Court was proper "because [the] matter was originally commenced in Commonwealth Court[,] and the issues presented by [the] appeal from a final order have not previously been reviewed by an appellate court. Pa. Const. art. V, § 9; 42 Pa.C.S. § 723(a)." Id. at 761.
As further evidence that the Commonwealth Court was acting within its original jurisdiction in this case, Township suggests that if the Commonwealth Court had not been functioning within its original jurisdiction, "Mr. Fleck and Mr. Booher were improperly joined as parties by the Commonwealth Court." Township's brief at 12. It cites Pennsylvania Human Relations Commission v. School District of Philadelphia, 557 Pa. 126, 732 A.2d 578 (1999), for support, where we stated that the Commonwealth Court, acting in its appellate capacity, was subject to the rules of appellate procedure, not the rules of civil procedure and, therefore, lacked the authority to join additional parties. Id. at 581.
Appellee DEP contends, conversely, that as an enforcement proceeding, this matter lies in the Commonwealth Court's appellate jurisdiction and is subject only to discretionary review by this Court. DEP asserts we should quash Township's notice of appeal, treat it as a petition for allowance of appeal, and deny review.
Our discretionary review is set forth in 42 Pa.C.S. § 724(a), which provides in pertinent part:
§ 724. Allowance of appeals from Superior and Commonwealth Courts
(a) General rule.Except as provided by section 9781(f) (relating to limitation on additional appellate review), final orders of the Superior Court and final orders of the Commonwealth Court not appealable under section 723 (relating to appeals from Commonwealth Court) may be reviewed by the Supreme Court upon allowance of appeal by any two justices of the Supreme Court upon petition of any party to the matter.
DEP argues Lansdowne is not applicable and suggests the procedural posture in the instant case is identical to that in Pennsylvania Human Relations Commission v. Scranton School District, 510 Pa. 247, 507 A.2d 369 (1986) ("Scranton"). Scranton involved an appeal from a Commonwealth Court order that denied the appellant's petition to enforce an order against Scranton School District. HRC, the appellant, asserted that jurisdiction existed in this Court pursuant to 42 Pa.C.S. § 723(a). After a school district employee alleged discrimination against her by the school district, HRC issued an order against Scranton School District. The school district did not appeal that order. When the employee returned to HRC alleging that the school district violated HRC's order, HRC filed a petition for enforcement of its order in the Commonwealth Court. The Commonwealth Court held evidentiary hearings and thereafter denied the petition, and HRC filed a direct appeal to this Court. We quashed the appeal, relying on our plurality decision in Pennsylvania Department of Aging v. Lindberg, 503 Pa. 423, 469 A.2d 1012 (1983), and treated the matter as a petition for allowance of appeal, which we denied. We stated, "Without regard to whether enforcement petitions are within Commonwealth Court's original jurisdiction, 42 Pa. C.S. § 761, they do not involve matters `originally commenced' in that court as required by 42 Pa.C.S. § 723(a)." Id. at 370. Thus, the Lindberg plurality view became the majority view in Scranton.
In Lindberg, the Department of Aging ("DOA") had filed a direct appeal to this Court from a Commonwealth Court order directing it to reinstate Mr. Lindberg to *649 the position from which the Civil Service Commission determined he had been improperly furloughed. We concluded that DOA had a right of direct appeal only if Mr. Lindberg's petition to enforce the Civil Service Commission's order, which the Commonwealth Court had previously affirmed upon DOA's petition for review, was an action originally commenced in the Commonwealth Court. We concluded that matters that are pendant to actions in the Commonwealth Court's appellate jurisdiction, or ancillary to it, are not originally commenced in the Commonwealth Court within the meaning of 42 Pa.C.S. § 723.
School District of Philadelphia, supra, also addressed, inter alia, whether an enforcement action is to be treated in the Commonwealth Court's original or appellate jurisdiction. Therein, HRC initiated a complaint in 1970 against the Philadelphia School District alleging unlawful segregation by race and ordered the district to submit a desegregation plan. The school district appealed, and the Commonwealth Court affirmed and remanded to HRC for modification. HRC issued an amended final order that incorporated the court-ordered modifications on September 5, 1972. This Court noted that all subsequent litigation over the ensuing twenty-three years involved enforcement proceedings pertaining to the September 5, 1972 order. We held that "the nature of enforcement proceedings as well as a desirable consistency warrant the conclusion that just as enforcement proceedings are not originally commenced in Commonwealth Court, they are also in the appellate, rather than the original, jurisdiction of the court." Id. at 581 (emphasis added).
Appeals from final administrative orders in enforcement actions in the Commonwealth Court are subject to our discretionary review under 42 Pa.C.S. § 724(a) because enforcement proceedings lie in that court's appellate jurisdiction; they are not appealable as of right under 42 Pa.C.S. § 723(a). This arguably has been the law since this Court's decision in Lindberg. In the instant case, DEP issued its May 24, 2002 order directing Township to implement its Act 537 Plan by providing public sewers from Pogue Village to Rockhill Furnace Borough. Township did not appeal DEP's order to the EHB.[11]See Township Answer to Petition for Enforcement of Administrative Order, 1/16/08, at ¶ 7; 35 P.S. § 750.16(b). We clarified in Scranton that whether an appellant seeks enforcement of an order that was never reviewed on the merits by the Commonwealth Court but became final when the appellee did not appeal, as in Scranton, or enforcement of a reinstatement order that the Commonwealth *650 Court affirmed on appeal, as in Lindberg, is an "immaterial" distinction. Scranton, 507 A.2d at 370. Herein, when DEP could not obtain Township's compliance with the May 24, 2002 order, DEP filed its contempt petition. In light of Lindberg, Scranton, and School District of Philadelphia, the ensuing appeal from the enforcement proceeding in Commonwealth Court is discretionary, not by right.
Township's suggestion that the Commonwealth Court's contempt adjudication was a new matter brought before that court in its original jurisdiction does not have record support. All filings in the Commonwealth Court record at docket number 611 MD 2007, beginning with the petition for enforcement filed by DEP on December 19, 2007, the initial docket entry, represent DEP's efforts to enforce the May 24, 2002 order. Only DEP's December 19, 2007 petition for enforcement was original process that followed multiple hearings and preceded several more. The contempt petition in August 2008 was merely one in a series of filings in the Commonwealth Court. See, e.g., Dept. of Environmental Resources v. Sabia, 99 Pa. Cmwlth. 29, 512 A.2d 1297, 1298 (1986) (contempt proceedings brought by DER based on Sabia's alleged failure to abide by order requiring it to comply with environmental statute arose directly from and were integral part of DER's original enforcement action). Indeed, in Sabia, DER found the defendant in violation of the Clean Streams Law, 35 P.S. §§ 691.1-.1001, and the Solid Waste Management Act, 35 P.S. §§ 6018.101-.1003, on September 3, 1982, and spent the next several years attempting to procure its compliance with the Commonwealth Court's November 30, 1983 enforcement order. Regarding Sabia's claim that the contempt petition[12] was too attenuated from the underlying order, the Commonwealth Court noted:
We agree . . . with DER that the mere passage of time does not remove a contempt action from its underpinnings-namely, an order of this Court with which the defendant has failed to comply. In this case, although two and one-half years have lapsed since this Court issued its enforcement Order, DER nonetheless bases its contempt petition on Sabia's alleged failure to comply with that Order. The contempt proceeding arises directly from and is an integral part of DER's original enforcement action.
Sabia, 512 A.2d at 1298 (emphasis added). This same rationale applies to Township's claim that DEP's contempt petition was separate from the prior events in the case. This enforcement[13] matter clearly was not originally commenced in the Commonwealth Court as required by 42 Pa.C.S. § 723(a). See also Gossman v. Lower Chanceford Township Board of Supervisors, 503 Pa. 392, 469 A.2d 996 (1983) (the appellant did not have right to direct appeal under 42 Pa.C.S. § 723(a) where matter was not originally commenced in Commonwealth Court).
Moreover, the individual Board supervisors were not named parties, nor is there any record that they were joined as parties. *651 Township, while challenging the incarceration of former supervisor David Booher, admits that he is not the appellant in this case; Township is the appellant, further lending support to the mere enforcement nature of the matter addressed in the Commonwealth Court, as opposed to one originally commenced in that court. See Township's brief at 18.
Accordingly, we hold Township has no right of direct appeal to this Court. Thus, we treat the notice of appeal as a petition for allowance of appeal. See Pa. R.A.P. 1102 (appeal improvidently taken to this Court under Pa.R.A.P. 1101, governing appeals as of right from the Commonwealth Court, in a case where proper mode of review is by petition for allowance of appeal, is not alone grounds for dismissal; papers upon which appeal was taken regarded as petition for allowance of appeal). This very conclusion, that there is no right of direct appeal in this matter, significantly and positively influences our decision to grant the ensuingly-reconstituted petition for allowance of appeal. As we have concluded that Township may seek only our discretion in proceeding with an appeal, it is readily observable that the Commonwealth Court's incarceration order for contempt becomes fairly insulated from additional review, as any further consideration, accordingly, is not guaranteed. For this reason, among others, including the irregularities and lack of clarity in this matter, we grant the appeal.

III.
Within this appeal, Township challenges the incarceration of its former Board supervisor. It is undisputed that all of the supervisors who were serving on the Board at the time Township was held in contempt have resigned. The instant appeal was filed on August 10, 2009, and David Booher, the sole supervisor who ultimately was incarcerated, resigned four days later, on August 14, 2009, and was released from jail that day. Thus, at the time the appeal was filed, Booher was imprisoned, but he subsequently was released.
The mootness doctrine requires an actual case or controversy to exist at all stages.
It is a well-established principle of law that this Court will not decide moot questions. The articulation of the mootness doctrine . . . was acknowledged in our decision in In re Gross, 476 Pa. 203, 382 A.2d 116 (1978) as follows:
The problems arise from events occurring after the lawsuit has gotten under waychanges in the facts or in the lawwhich allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that "an actual controversy must be extant at all stages of review.. . ." G. Gunther, Constitutional Law 1578 (9th ed.1975).
476 Pa. at 209, 382 A.2d at 119. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law.
In re Cain, 527 Pa. 260, 590 A.2d 291, 292 (1991).
As noted supra, Township admits that it is the appellant in this case, not David Booher. Township's brief at 18. Furthermore, upon the resignations of David Booher, Lewis Fleck, and Howard Clark, three new Township supervisors were appointed. It is possible, if not likely, that even those Board supervisors are no longer serving Township. Township represents, and the record reveals, that the enforcement of the DEP order remains an active case on the Commonwealth Court's *652 docket. Reproduced Record at 127a-28a. Thus, Township's interest is not moot, as Township presumably retains Board supervisors who are subject to the DEP order and the Commonwealth Court's impending orders in this matter.
Even if the matter before us is moot, however, review is not precluded.
Various well recognized exceptions to the mootness doctrine permit a court's review of issues that are, in fact, moot. One such exception is the doctrine of "capable of repetition yet evading review":
Exceptions to this principle are made where the conduct complained of is capable of repetition yet likely to evade review, where the case involves issues important to the public interest or where a party will suffer some detriment without the court's decision.
Public Defender's Office of Venango County v. Venango County Court of Common Pleas, 586 Pa. 317, 893 A.2d 1275, 1279-80 (2006) (citing Sierra Club v. Pennsylvania PUC, 702 A.2d 1131, 1135 (Pa.Cmwlth. 1997)), aff'd, Sierra Club v. PUC, 557 Pa. 11, 731 A.2d 133 (1999).
Here, Township continues to be subject to the enforcement order, and it is possible that successor supervisors similarly face incarceration by the Commonwealth Court. We have held that even where a contemnor's terms of imprisonment have expired, an appeal is not moot, since the contemnor remains subject to the underlying order, and a failure to comply may result in additional contempt sanctions. See, e.g., Barrett v. Barrett, 470 Pa. 253, 368 A.2d 616, 619 n. 1 (1977).[14] Accordingly, we will address the merits.

IV.
As noted supra, Township appealed the order implementing imposition of sentence against former Board supervisors Howard Clark, Lewis Fleck, and David Booher. As part of the enforcement proceedings, DEP had petitioned the Commonwealth Court to find the "Respondent" therein, "Cromwell Township," in contempt of the January 22, 2008 order and "to compel the Township to comply with [that] Court's Order." Petition for contempt, 8/11/08, at 1 (emphasis added). DEP requested the Commonwealth Court to consider specific actions to compel Township to comply with the May 24, 2002 order directing Township to implement its Act 537 Sewage Facilities Plan, including a finding of contempt, financial penalties against Township and the individual supervisors, an award of DEP's costs and attorneys' fees, and a schedule of compulsory tasks to purge Township's contempt. Inexplicably, Commonwealth Court Judge Keith B. Quigley proceeded to order the incarceration of the supervisors, who were not named parties in this action.
The issue before us is distinct. There is no question concerning the propriety of DEP's May 24, 2002 order directing Township to implement its August 2000 Act 537 Plan.[15] Pursuant to the Environmental *653 Hearing Board Act, 35 P.S. § 7514(c), the failure to appeal within thirty days rendered DEP's action final. Thus, Township was foreclosed from challenging that directive before the statutorily-appointed administrative tribunal, the EHB, and exercising the appeal right provided in Article 5, Section 9 of the Pennsylvania Constitution. Further, Scranton made clear that whether an appellant seeks enforcement of an order that was never reviewed on the merits by the Commonwealth Court but became final when no appeal was taken, or enforcement of an order that the Commonwealth Court affirmed on appeal, is an "immaterial" distinction. Scranton, 507 A.2d at 370.
Our sole focus is on the propriety of the contempt sanctions imposed by Judge Quigley on the individual supervisors. "Courts possess an inherent power to enforce their orders by way of the power of contempt." Commonwealth v. Bowden, 576 Pa. 151, 838 A.2d 740, 760 (2003) (quoting Brocker v. Brocker, 429 Pa. 513, 241 A.2d 336, 338 (1968)). While it goes without saying that the courts possess the inherent power to enforce their orders for noncompliance through imposition of penalties and sanctions, Commonwealth ex rel. Beghian v. Beghian, 408 Pa. 408, 184 A.2d 270 (1962), we hold that the Commonwealth Court's failure herein to utilize less restrictive means prior to imposing sentences of incarceration compels reversal.[16]
Recognizing that "the judicial contempt power is a potent weapon," International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967), courts have created a number of prudential principles designed to oversee its use. In levying contempt sanctions, a court must exercise the least possible power suitable to achieve the end proposed. The United States Supreme Court provided guidance in this area in Spallone v. United States, 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990).
In 1980, the United States sued the city of Yonkers, New York, for engaging in a pattern of housing discrimination. The district court, finding that Yonkers had deliberately concentrated most of its federally-subsidized public housing in the southwest portion of the city so as to maintain residential segregation in violation of Title VIII of the Civil Rights Act of 1968 and the Fourteenth Amendment of the United States Constitution, ordered dispersal of public housing throughout Yonkers, but the city delayed acting on the court's order. Shortly after the court of appeals affirmed the district court, Yonkers entered into a consent decree in which it agreed, inter alia, to implement the district court's remedial order including the adoption of a legislative package known as the Affordable Housing Ordinance ("AHO"), within ninety days.
Although the city had executed the consent decree and all avenues of appellate review had been exhausted, Yonkers informed the district court that it would not voluntarily enact the legislation contemplated by the consent decree. After efforts to obtain the city's cooperation failed, the district court entered an order, on July 26, 1988, directing Yonkers to adopt a resolution indicating its willingness to enact *654 the AHO. That order provided that the failure to vote favorably on the resolution would result in (1) contempt citations and escalating fines against Yonkers, and (2) $500-per-day fines for each individual council member who voted against the resolution. Notwithstanding the threat of sanctions, the Yonkers City Council defeated the resolution by a four-to-three vote. After conducting a hearing, the district court held the city and the individual council members comprising the majority in civil contempt and imposed sanctions in accordance with its July 26, 1988 order. The Court of Appeals for the Second Circuit affirmed the imposition of contempt sanctions. In September 1988, after the Supreme Court had denied the city's application for a stay, and with fines approaching one million dollars per day, the Yonkers City Council finally adopted a resolution declaring its intent to enact the AHO.
In the interim, the United States Supreme Court had granted certiorari in connection with the district court's imposition of contempt sanctions against the individual council members. Assessing the district court's action, the Court represented that the "nub of the matter, then, is whether in the light of the reasonable probability that sanctions against the city would accomplish the desired result, it was within the court's discretion to impose sanctions on petitioners as well under the circumstances of this case." Id. at 278, 110 S.Ct. 625. The Supreme Court reversed the contempt charges as to the individual council members, noting that "the city . . . was a party to the action from the beginning. . . . [T]he individual city council members, on the other hand, were not parties to the action, and they had not been found individually liable. . . ." Id. at 276, 110 S.Ct. 625.
The Supreme Court's ruling was narrowly premised upon "traditional equitable principles," Id. at 274, 110 S.Ct. 625, which it construed as requiring that a court imposing contempt sanctions utilize the "least possible power adequate to the end proposed." Id. at 276, 110 S.Ct. 625 (quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 5 L.Ed. 242 (1821)). Notably, the Supreme Court found it unnecessary to reach any of the council members' constitutional arguments, including that of legislative immunity. Spallone, 493 U.S. at 274, 110 S.Ct. 625.[17]
Since, in the Supreme Court's view, the record failed to demonstrate that imposing sanctions against the individual council members initially was necessary to achieve the desired end of compliance with the consent decree, the imposition of those sanctions was premature and an abuse of the district court's discretion. Id. at 280, 110 S.Ct. 625. Chief Justice Rehnquist, writing for the majority, concluded that the district court should have proceeded with contempt sanctions "first against the city alone in order to secure compliance with the remedial order. Only if that approach failed to produce compliance within a reasonable time should the question of imposing contempt sanctions against petitioners even have been considered." Id. at 280, 110 S.Ct. 625. The Spallone majority, commenting on the difference in impact between sanctions imposed against a municipality versus elected officials, observed:
Sanctions directed against the city for failure to take actions such as those *655 required by the consent decree coerce the city legislators and, of course, restrict the freedom of those legislators to act in accordance with their current view of the city's best interests. But we believe there are significant differences between the two types of fines. The imposition of sanctions on individual legislators is designed to cause them to vote, not with a view to the interest of their constituents or of the city, but with a view solely to their own personal interests. Even though an individual legislator took the extreme positionor felt that his constituents took the extreme positionthat even a huge fine against the city was preferable to enacting the Affordable Housing Ordinance, monetary sanctions against him individually would motivate him to vote to enact the ordinance simply because he did not want to be out of pocket financially. Such fines thus encourage legislators, in effect, to declare that they favor an ordinance not in order to avoid bankrupting the city for which they legislate, but in order to avoid bankrupting themselves.
This sort of individual sanction effects a much greater perversion of the normal legislative process than does the imposition of sanctions on the city for the failure of these same legislators to enact an ordinance. In that case, the legislator is only encouraged to vote in favor of an ordinance that he would not otherwise favor by reason of the adverse sanctions imposed on the city. A councilman who felt that his constituents would rather have the city enact the Affordable Housing Ordinance than pay a "bankrupting fine" would be motivated to vote in favor of such an ordinance because the sanctions were a threat to the fiscal solvency of the city for whose welfare he was in part responsible. This is the sort of calculus in which legislators engage regularly.
We hold that the District Court, in view of the "extraordinary" nature of the imposition of sanctions against the individual councilmembers, should have proceeded with such contempt sanctions first against the city alone in order to secure compliance with the remedial order. Only if that approach failed to produce compliance within a reasonable time should the question of imposing contempt sanctions against petitioners even have been considered. "This limitation accords with the doctrine that a court must exercise `the least possible power adequate to the end proposed.'" [Citations omitted.]
Spallone, 493 U.S. at 279-80, 110 S.Ct. 625 (quoting Shillitani v. United States, 384 U.S. 364, 371, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)).
The case at bar presents circumstances less egregious than in Spallone, which involved serious federal constitutional issues, yet more onerous than in Spallone. The individual supervisors, who were held in contempt when they had never been so charged, were imprisoned, much less fined. DEP maintains that the sanctions imposed by Judge Quigley were indeed the least restrictive necessary to achieve compliance with the Commonwealth Court's orders. The record does not support such a conclusion.
DEP contends that "various Township supervisors" failed to comply with their statutory responsibilities for "at least seven years prior to the imposition of sanctions by Judge Quigley." DEP's brief at 41. The record reveals otherwise. In 2005, Township executed the Agreement with ORJMA followed by amendment of Township's Act 537 Plan. While the change in Board membership in 2006 curtailed Township's further compliance with the May 24, 2002 order, it is incorrect to assert *656 that all Township supervisors refused to comply with their statutory responsibilities for more than seven years. Moreover, Township's failure to comply with the May 24, 2002 order is not our focus, as there is no question that Township failed to implement its Act 537 Plan. Rather, it is the specific sanction of imprisonment of Board supervisors that has the attention of this Court.
The Commonwealth Court had lesser alternatives available to it in its attempt to compel Township's compliance with the court's prior order. DEP requested imposition of fines, but the Commonwealth Court inexplicably refused. As a point of reference, we also note that the Sewage Facilities Act provides for civil penalties against a municipality in the minimum amount of $300 per day for failure to submit or implement its official plan, and such penalty could have, and should have provided the Commonwealth Court with a roadmap here. See 35 P.S. § 750.13a(f) ("Any municipality which fails to submit any official plan . . . shall be subject to a civil penalty. . . . [of] a minimum of. . . . $300 per day . . . for each day of the failure. . . .").[18] The imposition of fines against Township should have been at the forefront of the Commonwealth Court's consideration, and certainly should have preceded incarceration of individual supervisors who were never named or charged.
The Commonwealth Court's remedy should have begun with the minimum level of sanctions necessary to achieve the desired end. If those measures later proved ineffective, the court could have considered actions that are more stringent. Indeed, when the least intrusive measures fail to compel enforcement of a court order, more intrusive measures are justifiable. Spallone, 493 U.S. at 280, 110 S.Ct. 625 (if sanctioning city failed to induce compliance, court could consider sanctioning individual council members).[19]
Here, the incarceration of Board supervisors brought the work of Township to an immediate halt, which also draws into question whether the incarcerated supervisors could have purged the contempt. DEP asserts the wholly unsupported representation that Mr. Booher would have been released "if he merely acknowledged his responsibility to comply with the court's orders." DEP brief at 42. Not only does DEP fail to substantiate such a claim, there never has been an assertion that Board supervisors denied their responsibility to comply with the court's orders; their recalcitrance has focused solely on their perceived inability to do so. The July 8, 2009 order implementing the March 9, 2009 order directing imposition of a three-to-six-month prison term advises that to purge contempt, the Commonwealth Court "will consider efforts to comply with the terms of the Court's order dated January 22, 2008," and that the Board "exhaustively explore the availability of financing and grants." Order, 9/16/08, at unnumbered 1-2. These actions were impossible to achieve while imprisoned. Township advises:
During Booher's first three days of imprisonment[,] he was allowed no contact with any individuals except his counsel. *657 After this initial confinement[,] he was permitted limited access to visitors and the phone service. His primary means of communication was via the U.S. postal service. Further, he was assigned to a work detail which kept him out of the prison from early morning to mid-afternoon.
Township's brief at 22. As noted, Supervisors Fleck and Clark resigned to avoid incarceration. Imprisonment of all three supervisors per the Commonwealth Court's order assured that the business of Township could not have been conducted; thus, they had no way to purge the contempt.[20]
In selecting a means to enforce its orders, the Commonwealth Court "was entitled to rely on the axiom that `courts have inherent power to enforce compliance with their lawful orders through civil contempt.'" Spallone, 493 U.S. at 276, 110 S.Ct. 625 (quoting Shillitani, 384 U.S. at 370, 86 S.Ct. 1531). In view of the extraordinary nature of the incarceration of individual Board supervisors, however, we hold that the Commonwealth Court should have proceeded initially with sanctions against Township alone in order to secure compliance with the court's May 24, 2002 order. Such limitation "accords with the doctrine that a court must exercise `the least possible power adequate to the end proposed.'"[21]Spallone, 493 U.S. at 280, 110 S.Ct. 625.
The direct appeal is dismissed for lack of jurisdiction. Treating the notice of appeal as a petition for allowance of appeal, the petition is granted. The Commonwealth Court's order sentencing Board supervisors to imprisonment is reversed. Case remanded to Commonwealth Court for consideration of sanctions against Cromwell Township. Jurisdiction relinquished.
Chief Justice CASTILLE and Justices EAKIN and McCAFFERY join the opinion.
Justice SAYLOR files a concurring opinion, in which Justices BAER and TODD join.
Justice SAYLOR, concurring.
With regard to jurisdiction, I do not see how it can be that a new party (Mr. Booher, individually) may be effectively brought onto the record in an enforcement proceeding, found to be in contempt, and incarcerated, without an available appeal as of right. See PA. CONST., art. V, § 9. It may be that the Court did not have the foresight, in PHRC v. School District of Philadelphia, 557 Pa. 126, 732 A.2d 578 (1999), to anticipate the full repercussions of its ruling. Nevertheless, in the face of those presented here, I, for one, am certainly willing to reconsider the decision's appropriate parameters and/or continuing viability. Notably, commentators have identified the strong conceptual difficulties *658 with treating enforcement proceedings in which an agency is seeking non-statutory, judicial redress as appellate jurisdiction matters:
The supreme court has not yet identified. . . the order that is appealed to the commonwealth court, when the appeal period begins, how the "appellant" agency is aggrieved by its own order and thus has standing to appeal, or what the commonwealth court's scope and standard of review are. The ramifications of this unusual approach to enforcement proceedings are an aspect of the appeal currently pending in Department of Environmental Protection v. Township of Cromwell.

Kristen W. Brown and Blair T. Preiser, Jurisdiction of the Commonwealth CourtForty Years of Proving the Drafters Right, 20 WIDENER L.J. 5, 23 (2010).
Ideally, the Legislature should be clearer in establishing its contemplated scheme for enforcement of the Department's administrative orders, thus solidifying the jurisdictional underpinnings. In the absence of such prescription, where, as here, an agency has averred that it is without an adequate remedy at law and seeks non-statutory remedies to enforce its own directives from a court of law, the only conceptually stable conclusion is that the court's original jurisdiction is implicated. At the very least, when the agency seeks additional remedies against members of a governing body as "individual[s]," Petition for Contempt, R.R. at 7a, either original jurisdiction must be recognized or the agency's effort must be regarded as an impermissible attempt to join additional parties on the "appeal." See PHRC, 557 Pa. at 132, 732 A.2d at 581 ("The parties to an enforcement proceeding are limited to the parties before the administrative agency."). In either event, I support the majority's decision disapproving the sanction, albeit for different reasons.
Justices BAER and TODD join this concurring opinion.
NOTES
[1] Act of January 24, 1966, P.L. (1965) 1535, as amended, 35 P.S. § 750.1 et seq. (commonly known as "Act 537").
[2] Although 35 P.S. § 750.2 defines "Department" to mean the Department of Environmental Resources ("DER"), 71 P.S. § 1340.101(b)(2) changed the name in 1995 to the Department of Environmental Protection. 25 Summ.Pa.Jur.2d Environmental Law § 9:173 n. 8.
[3] The EHB is the administrative tribunal with the power and duty to review DEP actions pursuant to section 4(a) of the Environmental Hearing Board Act. Act of July 31, 1988, P.L. 530, as amended, 35 P.S. § 7514(a). See also Tire Jockey Service, Inc. v. Com., Dept. of Environmental Protection, 591 Pa. 73, 915 A.2d 1165, 1185 (2007).
[4] There is no assertion by either party that the order imposed was anything other than civil contempt. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." Brocker v. Brocker, 429 Pa. 513, 241 A.2d 336, 339 (1968), cert. denied, 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969) (citing Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 448, 449, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). See also Knaus v. Knaus, 387 Pa. 370, 127 A.2d 669 (1956).
[5] The order was filed on July 9, 2009.
[6] DEP represents that upon Mr. Booher's resignation, three new Township supervisors were appointed. On January 15, 2010, DEP and Township allegedly agreed that Township's intended modifications to its Plan adequately addressed the work Township was required to perform in order to "meet its current obligations under" Act 537. On January 22, 2010, the Commonwealth Court granted the application and cancelled the hearing scheduled for April 26, 2010. Obviously, these actions occurred subsequent to the appealed order.
[7] As the thirtieth day of the appeal period fell on August 8, 2009, which was a Saturday, the appeal filed on Monday, August 10, 2009 was timely. 1 Pa.C.S. § 1908.
[8] Pennsylvania State Association of Township Supervisors, comprised of more than 1,450 Pennsylvania townships "is a statutorily authorized unincorporated association" representing the interests of second class townships in Pennsylvania. Amicus brief at 1.
[9] See 42 Pa.C.S. §§ 761 and 764.
[10] See 42 Pa.C.S. §§ 762 and 763.
[11] This Court stated in Interstate Traveller Services, Inc. v. Com., Dept. of Environmental Resources, 486 Pa. 536, 406 A.2d 1020, 1023-24 (1979) (plurality) (referring to 71 P.S. § 510-21, repealed and replaced by 35 P.S. §§ 7511 et seq.) (quoting Erie Human Relations Commission ex rel. Dunson v. Erie Insurance Exchange, 465 Pa. 240, 348 A.2d 742, 744 (1976)):

"[I]t is well settled that `where statutory remedies are provided, the procedure prescribed by the statute must be strictly pursued, to the exclusion of other methods of redress.' (citations omitted). This is particularly true of special statutory appeals from the action of administrative bodies." (citations omitted emphasis added). See also Commonwealth v. Derry Township, 466 Pa. 31, 351 A.2d 606 (1976) (failure to appeal to EHB from a DER order requiring township participation in regional planning rendered that order final and foreclosed any attack on its validity or content in the enforcement proceeding) and Commonwealth, Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp., 473 Pa. 432, 375 A.2d 320 (1977) (failure to appeal to EHB from a DER order granting a variance until a given date rendered that order final and foreclosed any attack on its validity or content in the enforcement proceeding).
[12] While the opinion does not indicate the filing date of the contempt petition, we can extrapolate that it was filed in early 1986.
[13] Indeed, in its subsequent argument concerning whether the instant matter is moot, which we address in Part III, infra, Township unwittingly admits to the mere enforcement nature of the proceedings, as opposed to a new and separate matter before the court. See Township's brief at 17 ("[T]he enforcement of the DEP Order is still an active case on the Commonwealth Court's docket as reflected by the docket entries.").
[14] We reject DEP's argument that because new Board supervisors eventually entered into an agreement addressing Township's sewage disposal problems, thereby precluding the likelihood that the Commonwealth Court would impose additional sanctions, Barrett is inapposite to the instant case. This claim is based upon Township's alleged actions in January 2010 that are dehors the record. See DEP's brief at 30, 32. Furthermore, it is the existence of the possibility of continued imposition of sanctions, not their likelihood of occurrence, that is the foundation of the doctrine of "capable of repetition yet evading review."
[15] It is well settled that "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." United States v. Rylander, 460 U.S. 752, 756, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) (quoting Maggio v. Zeitz, 333 U.S. 56, 69, 68 S.Ct. 401, 92 L.Ed. 476 (1948)).
[16] Contrary to Judge Quigley's suggestion, Township's inclusion of this issue in its reconsideration motion is sufficient to avoid waiver.
[17] Likewise, we need not explore Township's asserted applicability of Montgomery v. City of Philadelphia, 392 Pa. 178, 140 A.2d 100 (1958), and Jonnet v. Bodick, 431 Pa. 59, 244 A.2d 751 (1968), which held that township supervisors are "high public officials" who are immune because the acts claimed to have been committed were done in the performance of governmental functions. See Township's brief at 23.
[18] We do not suggest that the Sewage Facilities Act's civil penalties provided the extent of sanctions available to the Commonwealth Court in this situation, only that it provided the court with some guidance in choosing the least restrictive measure to consider and impose.
[19] The Spallone dissent, while disagreeing that the district court had not considered lesser alternatives, described the significant measures that previously had been attempted to coerce the intransigent council members therein.
[20] DEP outlined the following steps Township should be compelled to take in order to purge contempt:

A. By September 1, 2008, advertise project for bids;
B. By October 1, 2008, open bids;
C. By February 1, 2009, award contracts and issue notices to proceed;
D. By March 1, 2009, begin construction;
E. By January 1, 2010, complete construction.
Petition for contempt, 8/11/08, at 6. Board supervisors could not have accomplished any of these tasks while incarcerated.
[21] Although we touched upon aspects of Township's other issues, since our resolution of this issue is dispositive of the appeal, we need not address all other claims Township raises. See e.g., Peterson v. Shreiner, 822 A.2d 833, 836 (Pa.Super.2003) ("We shall only address Shreiner's third issue since we are reversing the decision of the trial court on that basis.").