IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Hector Huertas, pro se, | : | |
|           Petitioner | : | |
| | : | |
|        v. | : | |
| | : | |
| Lisa Fiscus; Gina M. Clark; | : | |
| Zachary J. Moslak; and Department | : | |
| of Corrections, Secretary Laurel Harry, | : | No. 555 M.D. 2023 |
|           Respondents | : | Submitted: February 4, 2025 |

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                   HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED: March 11, 2025


Before this Court are the preliminary objections (Preliminary Objections) of the Pennsylvania Department of Corrections' (Department) Hearing Examiner Lisa Fiscus (Fiscus), Department Facility Manager/Superintendent Gina M. Clark (Clark), Chief Hearing Examiner Zachary J. Moslak (Moslak), and Department Secretary Laurel Harry (Secretary Harry) (collectively, Respondents) to Hector Huertas' (Huertas) Amended Petition for Review in the nature of a Complaint (Petition) filed in this Court's original jurisdiction. After review, this Court quashes the Petition.

## Facts[1]

Huertas is an inmate at the State Correctional Institution (SCI) at Houtzdale.[2] On October 13, 2022, Huertas was issued a misconduct for charges involving possession or use of a controlled substance and possession of contraband. Upon receiving his misconduct, Huertas learned that Fiscus was to be the hearing examiner at his misconduct hearing. Thereafter, Huertas informed Clark that Fiscus' involvement created a conflict of interest that would deny him a fair and impartial hearing because Huertas and Fiscus had been involved in an illegal romantic relationship that ended on bad terms. Huertas requested a different hearing examiner, but Clark never responded and Fiscus remained the hearing examiner.

On October 18, 2022, Fiscus conducted Huertas' misconduct hearing by Zoom conference. Fiscus appeared excited to see Huertas and began asking questions about his personal life since they had last seen one another. Fiscus did not hide the fact that she knew Huertas. Huertas ignored Fiscus' advances, and she became upset. On October 27, 2022, Fiscus found Huertas guilty of the misconduct charges. Huertas appealed the decision to Clark who upheld Fiscus' decision. Huertas further appealed to Moslak who denied his appeal.

As a result of Fiscus' decision, Huertas spent almost 90 days in the Restricted Housing Unit. Huertas was transferred to SCI-Forest (hundreds of miles from his family and friends in Philadelphia), hindering the ability to receive visits. Huertas also lost contact visits for six months, was removed from his college courses at Eastern University and had to pay $135.00 to mail his property from SCI-Chester to SCI-Forest. *See* Petition ¶ 33. After Huertas was transferred to SCI-Forest, he encountered Fiscus who again tried to revive their relationship and revealed to Huertas that she found him guilty of the misconduct charges not based on the

---

[1] The facts are as alleged in the Petition.

[2] *See* https://inmatelocator.cor.pa.gov/#/Result (last visited Mar. 10 , 2025).

evidence, but because another staff member had requested she find him guilty. Huertas' relationship with Fiscus was discovered after Huertas was found with explicit photos that Fiscus had given to him.

On February 1, 2023, Huertas informed Moslak of Fiscus' declaration reflecting that she was not an impartial hearing examiner. Moslak refused to act on the matter. On February 20, 2023, Huertas notified Secretary Harry that evidence of his romantic relationship with Fiscus had been found, informed her of the circumstances surrounding the misconduct hearing, and declared that Moslak was aware and failed to remedy the situation. Secretary Harry refused to afford Huertas relief. On February 21 and September 6, 2023, Huertas sought relief from Moslak, but Moslak denied his requests.

On January 22, 2024, Huertas filed his Petition pro se in this Court seeking declaratory relief that Respondents violated his constitutional rights and further requesting that his misconduct be vacated and removed from his records. On February 2, 2024, Respondents filed the Preliminary Objections contending that Huertas could not maintain a procedural due process claim based on Department policy, Department Regulations,[3] or the United States Constitution, and that sovereign immunity bars his claim.[4]

---

[3] Notably, the Department's "administrative rules and regulations 'do not create rights in prison inmates.'" *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1035 (Pa. Cmwlth. 2014) (quoting *Commonwealth ex rel. Buehl v. Price*, 705 A.2d 933, 936 (Pa. Cmwlth. 1997)).

[4]
> In ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. Any doubt must be resolved in favor of the non-moving party.

*Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269, 1274 (Pa. Cmwlth. 2021) (*en banc*) (quoting *Dantzler v. Wetzel*, 218 A.3d 519, 522 n.3 (Pa. Cmwlth. 2019)) (citations omitted).

3

## Discussion

Preliminarily, although Respondents did not raise the issue in their Preliminary Objections, this Court must discern whether it has jurisdiction over the underlying appeal. "The question whether a court has jurisdiction . . . may be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*." *Dep't of Env't Prot. v. Cromwell Twp., Huntingdon Cnty.*, 32 A.3d 639, 646 (Pa. 2011).

The law is well established that "the Department's decisions regarding inmate misconduct convictions generally fall outside the scope of our original jurisdiction, even where a prisoner's constitutional rights have allegedly been violated." *Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269, 1274 (Pa. Cmwlth. 2021) (*en banc*).

> "Prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens." *Feliciano* . . . , 250 A.3d [at] 1274 . . . . "Admittedly, prisoners do not shed all constitutional rights at the prison gate, . . . but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 . . . (1995) (cleaned up). The limitation of these protections manifests in different ways.
>
> For example, and relevant here, a prisoner's right of access to judicial review is limited. . . .
>
> Nevertheless, there is a narrow category of prisoner due process claims that fall within our original jurisdiction. **To invoke this Court's original jurisdiction**, **a petitioner must identify a constitutionally-protected liberty or property interest**. *Williams v. Wetzel*, . . . 232 A.3d 652, 653-54 ([Pa.] 2020). The interest must not be limited by Department [R]egulations yet be affected by a final Department decision. *Bronson* [*v. Cent. Off. Rev. Comm.*], 721 A.2d [357,] 359 [(Pa. 1998)]; *Feliciano*, 250 A.3d at 1275. States may also create a liberty or property interest

4

protected by due process by adopting certain [R]egulations that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84. In such cases, the focus of inquiry is on the nature of the alleged deprivation, not the language of a particular [R]egulation. *Portalatin* [*v. Dep't of Corr.*], 979 A.2d [944,] 949 [(Pa. Cmwlth. 2009)] (discussing *Sandin*).

**Absent a protected interest, this Court lacks jurisdiction to consider a claim**.

*Gentilquore v. Pa. Dep't of Corr.*, 326 A.3d 512, 516-17 (Pa. Cmwlth. 2024) (emphasis added; footnotes omitted). "Rather than creating a *per se* bar against an inmate's right to procedural due process in each situation where internal prison discipline has been imposed, *Sandin* instead requires a fact-specific inquiry." *Feliciano*, 250 A.3d at 1279.

[T]he proper methodology for evaluating [procedural due process] deprivation claims under *Sandin* is to consider (i) the conditions of confinement relative to administrative segregation, (ii) the duration of that confinement generally, and (iii) the duration relative to length of administrative segregation routinely imposed on prisoners serving similar sentences. We also emphasize that a liberty interest can potentially arise under less-severe conditions when the deprivation is prolonged or indefinite.

*Feliciano*, 250 A.3d at 1279 (quoting *Aref v. Lynch*, 833 F.3d 242, 255 (D.C. Cir. 2016)).

Here, Huertas did not allege in the Petition any facts describing "the conditions of [his] confinement relative to administrative segregation[.]" *Id*. Additionally, Huertas offers no facts describing "the duration relative to length of administrative segregation routinely imposed on prisoners serving similar sentences[,]" *id*., nor does Huertas describe in the Petition information pertaining to the frequency of transfers generally arising from misconduct, or the regularity of restrictions on inmate contact visits following misconduct. Specifically, Huertas

5

fails to state therein that the punishment imposed upon him . . . , *i.e.*, [9]0 days of disciplinary custody, constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Nor does he offer any averments that would allow [this Court] to come to such a conclusion at this stage in the proceedings. There is thus nothing in the Petition . . . , as currently constituted, that would allow [this Court] to conclude that the Department was required to afford [Huertas] with procedural due process **in relation to that sanction** [and the alleged consequences arising therefrom].

*Feliciano*, 250 A.3d at 1279-80 (emphasis added). Accordingly, in the absence of a specifically-stated constitutionally-protected liberty or property interest, this Court lacks original jurisdiction and, thus, is constrained to quash the Petition.[5, 6]

## Conclusion

For all of the above reasons, the Petition is quashed.

_____
ANNE E. COVEY, Judge

---

[5] In his Petition, Huertas "invokes this Court[']s Original Jurisdiction . . . ." Petition at 1. Nonetheless, for completeness, to the extent that Huertas seeks review in this Court's appellate jurisdiction, this Court also addresses its appellate jurisdiction. The law is well established:

> This Court does not review prison grievances or misconduct appeals. *See Bronson*, . . . 721 A.2d [at] 358-59 . . . . This is because "internal prison operations are more properly left to the legislative and executive branches, and . . . prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference." *Id*. at 358 (agreeing with analysis from this Court that the Department's internal grievance review does not function on the level of a government agency); *see* [Section 763(a)(1) of the Judicial Code.] 42 Pa.C.S. § 763(a)(1).

*Gentilquore*, 326 A.3d at 516. Thus, this Court lacks appellate jurisdiction over Huertas' Petition.

[6] Because this Court concludes that it lacks jurisdiction, it does not reach Respondents' Preliminary Objections.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hector Huertas, pro se,            :
             Petitioner       :
                                :
            v.                :
                                :
Lisa Fiscus; Gina M. Clark;      :
Zachary J. Moslak; and Department  :
of Corrections, Secretary Laurel Harry,  :   No. 555 M.D. 2023
            Respondents   :

## O R D E R

AND NOW, this 11th day of March, 2025, Hector Huertas' Amended Petition for Review in the nature of a Complaint filed in this Court's original jurisdiction is quashed.

 

_____
ANNE E. COVEY, Judge